NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0018-16T2

STEVEN I. GROSS and GENEVIEVE
GROSS,

     Plaintiffs,

and

JERRY DIPIETRO, DAVID ARSHT,
BEVERLY ARSHT, IRA SACHS,
ANDREA SACHS, ED MARINELLI,
TONI MARINELLI, MARIA A.
MARINELLI, JEFF STEINIG,
and NIKKI STEINIG,

     Plaintiffs-Respondents,

v.

KEVIN A. IANNUZZI,

     Defendant-Appellant,

and

CITY OF MARGATE,

     Defendant-Respondent.

_____

BARRY ABRAHAM and ELLEN
ABRAHAM,

     Plaintiffs,

| APPROVED FOR PUBLICATION |
| --- |
| **June 5, 2019** |
| **APPELLATE DIVISION** |

v.

KEVIN A. IANNUZZI,

       Defendant-Appellant,

and

CITY OF MARGATE, JAMES
GALANTINO, in his official capacity,
and ROGER RUBEN[1], in his official
capacity,

       Defendants-Respondents.

_____

Argued December 19, 2018 – Decided June 5, 2019

Before Judges Alvarez, Reisner and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket Nos. L-3360-14 and L-6543-14.

Stephen J. Hankin argued the cause for appellant (Hankin Sandman Palladino Weintrob & Bell, attorneys; Stephen J. Hankin, of counsel and on the briefs).

John S. Abbott argued the cause for respondents City of Margate, James Galantino, and Roger Rubin.

Salvatore Perillo argued the cause for respondents (Nehmad Perillo & Davis, attorneys; Salvatore Perillo, of counsel and on the briefs).

---

[1] This defendant's name was misspelled in the complaint. The correct spelling is "Rubin."

The opinion of the court was delivered by

REISNER, J.A.D.

Defendants Kevin Iannuzzi, the City of Margate (Margate), and two city officials, James Galantino and Roger Rubin, appeal from a July 14, 2015 trial court order and an August 16, 2016 order denying reconsideration. For the reasons that follow, we affirm in part and reverse in part.

The trial court overturned Margate's approval of Iannuzzi's plan to demolish his beachfront townhome, which was damaged by Superstorm Sandy, and replace it with an elevated and enlarged free-standing residence. The court also rejected Iannuzzi's alternate plan to rebuild and elevate the townhome using its original footprint. In determining that Iannuzzi could not build a free-standing house and that any replacement structure could not be elevated, notwithstanding current flood-safety standards, the trial court relied on a Declaration of Covenants and Restrictions (the Declaration) that took effect in 1978 when the townhome development was built.

However, in August 2017, after the trial court decided the case, the Legislature amended N.J.S.A. 58:16A-103 (the Act), concerning flood-safe construction. The Act, originally adopted in 2013 in response to Sandy, prohibits enforcement of development ordinances that would prevent certain flood-safe construction, including the otherwise lawful raising of a Sandy-damaged structure. The 2017 amendment added row houses or attached

townhouses held in fee simple to the definition of "structure" and provided that deed restrictions could not be enforced to prevent elevation of a Sandy-damaged structure.[2]

Our review of the trial court's legal interpretations, including its interpretation of contracts, is de novo.  See Manalapan Realty, LP v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995); Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 528 (App. Div. 2003).  Applying that standard of review, we affirm the trial court's order insofar as it precludes Iannuzzi from razing the townhome and building a free-standing house on the lot, instead of either repairing or rebuilding the townhome.  We agree with the trial court that, by its terms, the Declaration prevents Iannuzzi from building a free-standing house without the approval of a majority of the other homeowners in the townhome development.[3]  The trial court also correctly

---

[2]  After this case was argued, we permitted the parties to submit supplemental briefs addressing the 2017 amendment.

[3]  Plaintiffs argue that even if a majority of the owners approve defendant's plan, the case should be remanded to Margate's currently-combined Planning/Zoning Board. They contend that constructing a free-standing house would be contrary to the terms of the land use approvals for the original development.  However, plaintiffs did not cross-appeal from the trial court's August 16, 2016 order, which vacated an earlier order remanding the matter to the Board to hear an administrative appeal from the issuance of a zoning permit.  Accordingly, that land use issue is not properly before us and we decline to address it.  Additionally, the issue is not ripe, because the Board

(continued)

determined that the Declaration was not abandoned, did not lapse, and remains in effect. On these issues, we affirm for the reasons cogently stated by the trial court in its written opinions dated July 14, 2015, and August 16, 2016, and we conclude that defendants' arguments do not merit further discussion. R. 2:11-3(e)(1)(E). We reach a different conclusion with respect to the issue of elevating the townhome.

Addressing a matter of first impression, we hold that N.J.S.A. 58:16A-103, as amended, applies to Iannuzzi's individually-owned townhome and permits him to elevate the structure as required by current flood-safety standards, despite Declaration provisions that would otherwise preclude him from doing so. As intended by the Legislature, the amended statute overrides the Declaration and any local development regulations that might otherwise prevent Iannuzzi from elevating the townhome. Hence, we reject plaintiffs' argument that Iannuzzi must obtain dispensation from Margate's Planning/Zoning Board because raising his townhome would be inconsistent with the development's original site plan approvals. Likewise, Iannuzzi's statutory right to elevate his townhome does not depend on whether the

---

(continued)
never ruled on the appeal, having decided to hold it in abeyance pending the outcome of this litigation.

townhome or the development as a whole suffered "substantial" damage within the meaning of Margate's flood-safety ordinance.

We further reject plaintiffs' argument that, even if Iannuzzi is permitted to raise the elevation of the townhome's first floor, he must maintain the existing height of the roofline by reducing the living space within the townhome. That cramped interpretation would defeat the legislative purpose to encourage flood-safe construction. In the circumstances presented here, Iannuzzi's right to protect his property from flood hazards outweighs his neighbors' right to preserve their ocean views.[4] Accordingly, we reverse the trial court order precluding Iannuzzi from elevating the townhome pursuant to the standards set forth in N.J.S.A. 58:16A-103 as amended.

I

In light of the narrow issue presented, the record evidence can be summarized as follows. In 1977, a developer obtained Planning Board approval to construct what, at the time, was an unusual townhouse development on the beachfront in Margate. The development consisted of one row of ten attached two-story oceanfront townhomes, and a second row of ten

---

[4] We do not address the issue – not presented here – whether Iannuzzi's neighbors also have the right to raise the elevation of their townhomes for flood safety, thereby incidentally regaining their water views. We note that in the trial court, Margate's attorney argued that all of the unit owners were legally entitled to elevate their units for flood safety and should do so.

attached three-story townhomes located directly behind the first row. The expressed purpose of this configuration was to give both rows of townhomes an ocean view. The Planning Board particularly noted that feature in its resolution approving the development.

Although the townhomes shared party walls that extended down into the foundation, each was situated on its own subdivided lot, was owned in fee simple, had its own separate roof and utilities, and was separately assessed and insured (including flood insurance). There was no homeowners' association and rooftop condensers were the sole common element.

On August 8, 1978, the developer executed and later recorded the Declaration, which set forth certain requirements that were to "run with the land and . . . be binding on all parties having or claiming any right, title or interest in the described property or any part thereof." The Declaration required homeowners to obtain approval of at least a majority of the property owners in order to build additions to their units, and required additions to conform "to the design of the development." The Declaration covenants were to remain in force for twenty-five years (from July 1, 1978 to July 1, 2003), with two additional twenty-five year renewal periods, "unless changed by a vote of two-thirds of the property owners at the time of expiration." Thus, at the time either of the first two twenty-five year periods expired, the owners

could vote to change the terms of the Declaration. Otherwise, the covenants would renew unchanged.

On October 29, 2012, Superstorm Sandy damaged all of the development's beachfront units. Nine of the units were repaired in place, although for reasons not evident on this record, they were not elevated to prevent future flood damage. The tenth townhome, located on the southern end of the row, was so badly damaged that Margate issued a notice of unsafe structure declaring it uninhabitable. The unit's then-owner did not repair it. Iannuzzi eventually bought the unit in its damaged condition, intending to demolish it and replace it with a free-standing house. Iannuzzi obtained a zoning permit for that construction from Margate's zoning officer. The local construction code official wrote Iannuzzi a letter advising that the townhome was substantially damaged by Sandy and any rebuilt structure would have to be elevated to thirteen feet above flood level, requiring an increase in elevation of slightly more than four feet.

Plaintiff Steven I. Gross filed an appeal with the Board challenging the issuance of the zoning permit. Before the appeal was heard, two groups of plaintiffs, one of which included Gross, filed lawsuits seeking to stop

A-0018-16T2

construction of the free-standing house.[5]  Iannuzzi defended his right to build the house.  However, in the alternative, he asserted a right to rebuild the original townhome in place and elevate it to meet flood safety standards.  Plaintiffs vigorously opposed both of Iannuzzi's proposed courses of action, potentially leaving Iannuzzi with a wrecked oceanfront townhome which he could not rebuild to current flood safety standards.

In a written opinion issued on July 14, 2015, the trial court rejected Iannuzzi's claims that the Declaration had expired or was otherwise no longer effective.  The court held that either building a free-standing house or elevating the townhome in place would constitute an "addition" under the Declaration, and thus required approval of a majority of the unit owners.  The court also reasoned that the townhouse was not a separate "structure" within the meaning of N.J.S.A. 58:16A-103, and hence that statute did not authorize Iannuzzi to elevate the townhome.  The trial court remanded to the Board Gross's appeal from the zoning permit.  On August 16, 2016, the trial court denied Iannuzzi's motion for reconsideration, but vacated the portion of the prior order remanding the matter to the Board.

As further discussed below, the Legislature then amended N.J.S.A. 58:16A-103.  The amendments extended the definition of "structure" to

---

[5]  The trial court enjoined Iannuzzi's proposed construction and consolidated the lawsuits.

include townhomes and precluded the enforcement of deed restrictions that would impede flood-safe construction.

II

Recognizing that safe construction in flood areas requires the elevation of first floors, the Legislature enacted N.J.S.A. 58:16A-103 to spare owners from having to obtain variances and other land use approvals in order to elevate existing buildings, including Sandy-damaged structures, located in flood-prone areas. As enacted in 2013, the statute provided that:

> b. (1) Notwithstanding the provisions of any other law to the contrary, except as otherwise provided pursuant to paragraph (2) of this subsection, a person shall be exempt from any development regulation, including any requirement to apply for a variance therefrom, that otherwise would be violated as a result of raising an existing structure to a new and appropriate elevation, or constructing a staircase or other attendant structure necessitated by such raising, provided, however, this exemption shall apply only to the minimum extent or degree necessary to allow the structure to meet the new and appropriate elevation with adequate means of ingress and egress.
>
> . . . .
>
> c. (1) Notwithstanding the provisions of any other law to the contrary, except as otherwise provided pursuant to paragraph (2) of this subsection, a person shall be exempt from any development regulation, including any requirement to apply for a variance therefrom, that otherwise would be violated as a result of using a new and appropriate elevation when lawfully repairing or reconstructing a Sandy-damaged structure, or constructing a staircase or other

10

attendant structure necessitated by use of the new and appropriate elevation, provided, however, this exemption shall apply only to the minimum extent or degree necessary to allow the Sandy-damaged structure to meet the new and appropriate elevation with adequate means of ingress and egress. . . .

[N.J.S.A. 58:16A-103(b)(1), (c)(1) (2013).]

Paragraph (b)(2) provides that the exemption does not apply "to a person who has altered the original dimensions of a structure if, had the alteration not been made, the structure could have been raised to meet the new and appropriate elevation either without the exemption or with an exemption of lesser degree than is needed with the alteration." N.J.S.A. 58:16A-103(b)(2).[6] Paragraph (c)(2) contains a similar provision for repair or replacement plans. N.J.S.A. 58:16A-103(c)(2). Under the 2013 statute, a "Sandy-damaged structure" meant "any structure that existed on October 28, 2012 and was damaged or destroyed by Hurricane Sandy," and "original dimensions" meant "the exact vertical and horizontal dimensions of a structure as it existed on October 28, 2012." N.J.S.A. 58:16A-103(a).

---

[6] The "[n]ew and appropriate elevation" is "any elevation to which a structure is raised, or is to be raised, that is equal to or higher than the applicable new [Federal Emergency Management Agency (FEMA)] base flood elevation, provided, however, in no case shall the new and appropriate elevation exceed the highest applicable flood elevation standard." N.J.S.A. 58:16A-103(a). The "[h]ighest applicable flood elevation standard" is defined by reference to flood elevation standards adopted by FEMA, "plus an additional three feet," or the applicable flood elevation standard required by the New Jersey Department of Environmental Protection, "whichever is higher." Ibid.

The legislative history clearly expressed the intent to allow flood-safe construction, notwithstanding local zoning laws.

This bill, as amended by the committee, would provide a person with a limited exemption from local land use restrictions when raising an existing structure to meet certain State or federal flood elevation standards, if raising the structure would otherwise result in a violation of the local land use restriction.

In particular, the exemption would allow a person to raise the structure to the "highest applicable flood elevation standard," which is defined in the bill to be the higher of two standards: (1) the new Federal Emergency Management Agency (FEMA) base flood elevation plus two additional feet, or (2) any applicable flood elevation standard required pursuant to rules and regulations adopted by the Department of Environmental Protection (DEP) pursuant to the "Flood Hazard Area Control Act."

A "new FEMA base flood elevation" is defined in the bill to mean any advisory base flood elevation or effective base flood elevation proposed or adopted after October 29, 2012, by the FEMA. A base flood elevation, as calculated by FEMA, represents the elevation of a flood with a one percent chance of occurrence during any given year, commonly referred to as a "100-year flood." A structure that is not elevated to the applicable FEMA-issued base flood elevation for its location is subject to a higher flood insurance premium under the National Flood Insurance Program.

For an existing structure, raising the structure to meet one of these flood elevation standards may, in certain cases, violate local land use restrictions, such as a maximum height restriction or a setback restriction. This bill would provide a partial exemption from such local land use restrictions, so as

12

to allow a property owner to raise an existing structure to the highest applicable flood elevation standard without violating local land use restrictions. The exemption would apply only to the minimum extent or degree necessary to meet the higher of the two standards, as they apply to the location in question.

[Assembly Environment and Solid Waste Committee, Statement to A. 3890 (May 13, 2013).]

Before its passage, the legislation was amended to broaden its scope to include "development regulations" as opposed to the narrower term "local land use regulations" and to make clear that it specifically applied to structures damaged by Sandy.

These floor amendments would provide for the exemption to apply to "development regulations," as defined pursuant to section 4 of the "Municipal Land Use Law," P.L.1975, c.291 (C.40:55D-4), rather than to "local land use restrictions." The term "development regulations" is more accurate for the purposes of this bill. The amendments would also provide that the exemption would apply not just when raising existing structures, but also when using a raised elevation in the repair or reconstruction of a structure damaged by Hurricane Sandy. Moreover, the amendments would clarify that the exemption would apply not just to the raising of a structure, but also to the construction of a staircase or other attendant structure necessitated by such raising. In addition, the amendments would clarify the scope and applicability of the exemption by changing the definition of "highest applicable flood elevation standard" and "new FEMA base flood elevation," and by establishing and defining the following new terms: "existing structure," "new and appropriate elevation," "original dimensions," and "Sandy-damaged structure." . . .

13

[Statement to Assembly with Senate Floor Amendments to A. 3890 (June 20, 2013).]

In August 2017, the Legislature amended the statute in two significant respects. Under the 2017 amendments, the definition of "structure" was expanded to include a row house or townhouse that, as in this case, is owned in fee simple:

> "Structure" means any dwelling or building; however, in the case of attached townhouses or row houses for which title to each townhouse or row house building, including the roof and other structural elements, is held in fee simple, "structure" means a single townhouse or single row house. "Structure" shall not include a unit which is part of a condominium as defined in P.L.1969, c. 257 (C.46:8B-1 et seq.).
>
> [N.J.S.A. 58:16A-103(a).]

The amendments also added a new section (d) addressing deed restrictions:

> d. Notwithstanding the provisions of any other law to the contrary, any deed restriction or agreement, no matter when entered into or made, that prohibits or has the effect of prohibiting any otherwise lawful raising or constructing of a structure to a new and appropriate elevation is contrary to public policy and therefore shall be unenforceable, except that all other covenants, easements, and restrictions of a common interest community shall remain in force, and costs associated with the construction, repair, or other related improvements to neighboring properties and common elements shall be borne solely by the owner of the structure which will be raised or constructed to a new elevation.

14                                                              A-0018-16T2

The amendments appear to be a response to the trial court's decision in this case, and the legislative history leaves no room for doubt as to the Legislature's continuing intent to sweep away obstructions to flood-safe construction:

> This bill would provide that any deed restriction or agreement that prohibits or has the effect of prohibiting any otherwise lawful raising or constructing of a structure to meet certain flood elevation standards is contrary to public policy and therefore unenforceable. The bill would also clarify how certain exemptions from development regulations under existing law apply in the case of townhouses or row houses for which title to each unit is held in fee simple.
>
> The provisions of the bill declaring . . . the unenforceability of certain deed restrictions or agreements would apply in the case of structures being raised or constructed to a "new and appropriate elevation," which is a defined term under existing law and based on certain flood elevation standards set forth in P.L.2013, c.107 (C.58:16A-103). The bill also provides that the deed restrictions or agreements covered by the bill would be unenforceable no matter when entered into or made.
>
> The bill defines the term "structure" to mean any dwelling or building; however, in the case of attached townhouses or row houses for which title to each unit is held in fee simple, it would mean a single townhouse or single row house. This definition would be applicable to the provisions of the bill that render certain deed restrictions or agreements unenforceable under the circumstances discussed above. In addition, the definition would clarify that certain existing

exemptions from development regulations prescribed in P.L.2013, c.107 (which apply when raising, repairing, or reconstructing certain structures to meet flood elevation standards) would be applicable in the case of a single townhouse or single row house, even when attached to or located within a complex, so long as title to each unit is held in fee simple.

[Senate Environment and Energy Committee, Statement to S. 2884 (January 30, 2017).]

Floor amendments, adopted prior to passage, added an exception excluding units that are part of a condominium, a provision not applicable here. The amendments also preserved "covenants, easements, and restrictions of a common interest community" other than those that would block flood-safety elevation. Statement to Senate with Assembly Floor Amendments to S. 2884 (May 22, 2017). The floor amendments protected neighbors by requiring that "costs associated with the construction, repair, or other related improvements to neighboring properties and common elements must be borne by the owner of the structure which is being raised or constructed to a new elevation." Ibid.

In their supplemental brief, plaintiffs raise a series of arguments attempting to distinguish the 2017 amendments. We find those contentions entirely without merit. They warrant no discussion beyond the following brief comments.

16

Plaintiffs argue first that because the Iannuzzi unit includes a party wall, and because all of the unit owners share the rooftop condensers, this unit cannot be considered a qualifying independent structure owned in fee simple under N.J.S.A. 58:16A-103. In support of this position, plaintiffs argue that in a 2014 webinar, FEMA stated that for purposes of assessing whether a structure has been substantially damaged, a row of townhomes with party walls constitutes a single structure. In amending the Act, our Legislature has clearly determined to use a different definition of "structure." Further, the Act does not require a finding of "substantial" damage. Lastly, it is undisputed that Iannuzzi's deed includes ownership of his unit's roof. Plaintiffs cite no authority for their assertion that a shared rooftop air-conditioning condenser defeats Iannuzzi's fee simple title to his townhome.

Plaintiffs next contend that, even if Iannuzzi's unit qualifies as a "structure" for purposes of N.J.S.A. 58:16A-103, he should not be permitted to raise it in violation of the Declaration, but instead should be required to give up the living space on the unit's first floor in order to avoid raising the roofline. We cannot agree.

In making their argument, plaintiffs ignore that the Declaration is no longer relevant by virtue of N.J.S.A. 58:16A-103(d), which voids any "deed restriction or agreement, . . . that prohibits or has the effect of prohibiting any otherwise lawful raising or constructing of a structure to a new and appropriate

17

elevation." Plaintiffs are correct that the exemption provided by N.J.S.A. 58:16A-103(c)(1) applies "only to the minimum extent or degree necessary to allow the Sandy-damaged structure to meet the new and appropriate elevation with adequate means of ingress and egress." But that does not mean Iannuzzi must abandon the first floor of his unit in order to comply with this provision.

Under the statute, structures are to be raised in their "original dimensions" to the "appropriate" elevation and no more. N.J.S.A. 58:16A-103(a), (b)(2), (c)(2). Reading the statute as a whole, we conclude the requirement that the exemption be as limited as possible must be read in pari materia with the requirements that the original dimensions of the structure be maintained and the elevation be no more than necessary. The clear import of the language is that the owner can raise the entire structure several feet off the ground, while maintaining the original dimensions of the structure – including the original amount of living space. Nothing in the wording or history of the statute remotely suggests that the Legislature intended to require owners of two-story residences to abandon the first floors of their homes in order to obtain a flood-protected structure.

Plaintiffs next argue that Iannuzzi must seek an amendment to the original site plan for the townhouse development because a site plan does not qualify as a "development regulation" from which Iannuzzi is exempt under N.J.S.A. 58:16A-103. That argument is without merit.

18

N.J.S.A. 58:16A-103(b)(1) provides, in pertinent part, that a person is "exempt from any development regulation, including any requirement to apply for a variance therefrom, that otherwise would be violated as a result of raising an existing structure to a new and appropriate elevation." Under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-4, a "[d]evelopment regulation" is defined as a "zoning ordinance, subdivision ordinance, site plan ordinance, official map ordinance or other municipal regulation of the use and development of land, or amendment thereto adopted and filed pursuant to [this act]." A "[s]ite plan" is defined as a "development plan of one or more lots." N.J.S.A. 40:55D-7. Because a development regulation includes a site plan ordinance, without which there would be no site plans, the exemption necessarily includes an amendment to a site plan. Holding otherwise would defeat the Legislature's purpose to allow owners of Sandy-damaged structures to comply with flood-safe construction measures, without the delays inherent in variance applications and site plan approvals. To leave no doubt on the subject, Iannuzzi does not have to obtain the Board's approval in order to elevate his townhome in accordance with the Act.

Plaintiffs' remaining arguments, invoking "the defenses of equitable estoppel and unclean hands," are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0018-16T2