**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2235-23

JOHN P. GROSS and JANICE
GROSS,

      Plaintiffs-Respondents,

v.

OCEAN BEACH SURF CLUB
UNIT 1,

      Defendant-Appellant,

and

TOMS RIVER TOWNSHIP,
CRAIG MARTIN, and
WILLIAM PARRETT,

      Defendants.

_____

Argued October 1, 2024 – Decided November 21, 2024

Before Judges Gilson, Bishop-Thompson, and Augostini.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Docket No. C-000125-22.

David A. Clark and Paul A. Leodori argued the cause for appellant (Dilworth Paxson, LLP, and Boudwin Ross Roy Leodori, PC, attorneys; Paul A. Leodori, of counsel; David A. Clark, of counsel and on the briefs; Caitlin Harney Norcia, on the briefs).

Philip G. Mylod argued the cause for respondents (Mylod & Fitzgerald, attorneys; Philip G. Mylod and Emiline M. Fitzgerald, on the briefs).

PER CURIAM

The dispute in this appeal concerns a building height restriction adopted by the homeowners' association of a private residential community in the Township of Toms River (Township). Defendant Ocean Beach Surf Club Unit 1 (the OBS Club) is a homeowners' association for the community in which plaintiffs John and Janice Gross own a home. In 1989, the OBS Club amended its by-laws to restrict the height of buildings in plaintiffs' area of the community to no more than twenty-eight feet. Plaintiffs challenged that restriction, claiming that the OBS Club had no authority to impose construction height restrictions because height restrictions were not in the original deed for their property. The trial court agreed, granted partial summary judgment to plaintiffs, and held that plaintiffs' property was not subject to the height restrictions imposed in the by-laws of the OBS Club.

A-2235-23

On leave granted, the OBS Club appeals from an August 17, 2023 order granting partial summary judgment to plaintiffs and a January 22, 2024 order denying the OBS Club's motion for reconsideration. Because there are genuine issues of material fact concerning the OBS Club's authority to adopt construction restrictions, we reverse, vacate the August 17, 2023 and January 22, 2024 orders, and remand for further proceedings.

I.

We discern the facts from the summary-judgment record, viewing them in the light most favorable to the OBS Club, which was the party against which summary judgment was granted. See Rivera v. Cherry Hill Towers, LLC, 474 N.J. Super. 234, 238 (App. Div. 2022).

Plaintiffs own property commonly known as 30 East Spray Way, in the Township (the Property). The Property is in the OBS Club community. The OBS Club is a corporation formed in June 1948 to "promote and protect the general welfare and property rights of the property owner members in their use and enjoyment of their property at Ocean Beach[.]" The OBS Club represents that there are currently 321 properties that are part of its community.

In the late 1940s, plaintiffs' Property was part of a larger tract of land owned by Edward and Marjorie Patnaude. The Patnaudes subdivided their

property and sold hundreds of parcels in deeds containing restrictions and covenants. Many of the properties sold by the Patnaudes became part of the Ocean Beach community. Fred C. Pearl was a business partner of the Patnaudes, and he was also involved in forming the original Ocean Beach community.

The chain of title for plaintiffs' Property involved three sales. First, on February 5, 1947, the Patnaudes sold the Property to Frank and Elizabeth Fitzpatrick subject to restrictions and conditions set forth in the deed (the Genesis Deed).[1] The Genesis Deed was duly recorded. Thereafter, the Fitzpatricks sold the Property in 1964 to Daniel and Dorothy O'Keefe, subject to the "covenants, conditions and restrictions contained in prior deeds of record." Finally, in May 1980, plaintiffs acquired the Property from the O'Keefes. Their deed was also "subject to covenants, conditions and restrictions contained in prior deeds of record."

The Genesis Deed contains various restrictions, three of which are relevant to the issues on this appeal. First, there was a restriction that all the property owners in the community join the property owners' association and abide by its rules. In that regard, the Genesis Deed provides:

---

[1] The parties refer to this deed as the "Genesis Deed." For consistency of reference, we also use that term to refer to the original deed.

ALL property owners in this development are required to be members of a property owners' association known or to be known as "OCEAN BEACH CLUB" and to faithfully abide by its rules. No sale, resale, or rental of any property in Ocean Beach shall be made to any person or group of persons who are, have been, or would be disapproved for membership by the OCEAN BEACH CLUB.

\* \* \*

BEING a private club the OCEAN BEACH CLUB shall make such rules as it deems necessary pertaining to the race, color, or creed of persons eligible for membership[2] and any other rules or regulations it chooses.

The Genesis Deed also had restrictions related to buildings and structures on the Property. In that regard, the Deed set forth restrictions concerning front, back, side setbacks for dwellings, and a width restriction. Specifically, the building restrictions for plaintiffs' Property state[3]:

No building shall be built or placed closer than TWO (2) FEET to the front lot line, THREE (3) FEET to the rear lot line, or TWO (2) FEET to the side lot line.

---

[2] There is no suggestion that the OBS Club has been using those criteria to exclude individuals from owning property in Ocean Beach. We note, moreover, that restrictions based on "race, color, or creed" are not enforceable. See N.J.S.A. 46:3-23; see also Comm. For A Better Twin Rivers v. Twin Rivers Homeowners' Ass'n, 192 N.J. 344, 370 (2007).

[3] Plaintiffs' lot is not an ocean front lot.

It is not recommended, but is permissible upon special approval by the Ocean Beach Co. Developers, to have the front of buildings including porches, garages, etc., to total over TWENTY-FOUR (24) feet. All buildings must be erected on the left side of lots when viewed from the road. Vacant space on the right side of lots when viewed from road.

There was also a general restriction that states: "No building, alteration, or addition shall be made without the written approval of the Ocean Beach Co."

In June 1948, the OBS Club was incorporated. At the same time, the OBS Club adopted its first by-laws. The OBS Club's certificate of incorporation and its by-laws state that the purpose of the Club includes: "promoting and protecting the general welfare and property rights of the property owner members in their use and enjoyment of their property at Ocean Beach in the [Township]." The by-laws also state that any "person or group of persons" will become members of the OBS Club on "the date of acquisition of title to property at Ocean Beach[.]" In addition, the by-laws impose various terms of membership, including a requirement that all members swear to abide by the "by-laws and any subsequent regulations imposed by this Club."

The first set of by-laws for the OBS Club created seven committees, including a "Grounds Committee." The by-laws provided the Grounds Committee with the following responsibilities:

6

It shall be the duty of the Grounds Committee to pass on all building permits; to see that all properties in the community are kept neat, well painted and in good repair; and to make all arrangements for garbage collection, street repairs, grading and other matters incident to the management of the property.

The OBS Club maintains that it is, and always has been, the property owners' association referenced as the "OCEAN BEACH CLUB" in the Genesis Deed. The OBS Club supports that position by pointing out that there is no other property owners' association for the community and that the Patnaudes recognized the OBS Club as the property owners' association. According to the OBS Club, that recognition is confirmed in several easements and conveyances the Patnaudes gave to the OBS Club in 1947 and 1948. For example, in November 1948, the Patnaudes conveyed several parcels of land to the OBS Club on the condition that the Club use them "as roadways for ingress and egress by all bonified members of said Ocean Beach Surf Club, Inc." That same month and year, the Patnaudes conveyed lands, consisting of beachfront property, to the OBS Club to be used by Club members for "bathing, sunbathing and kindred sports or pleasures" for Club members who "comply with the other rules and by-laws of said association."

The OBS Club also maintains that the Genesis Deed gives it the same authority as the "Ocean Beach Co." to approve buildings or alterations to

buildings in the Ocean Beach community. In that regard, the Genesis Deed states that "[n]o building, alteration, or addition shall be made without the written approval of the Ocean Beach Co."

The Genesis Deed also references the "Ocean Beach Co. Developers" which, the OBS Club maintains, were the Patnaudes and Fred C. Pearl. The OBS Club points out that the history of the Ocean Beach Co. was not fully developed before the summary judgment motion, and it argues that the Chancery court erred in granting summary judgment without discovery on the history of the Ocean Beach Co. and without that entity being a party to the litigation.

In October 1989, the OBS Club amended its by-laws to impose building height restrictions applicable to certain buildings in the community. Concerning plaintiffs' Property, the by-laws imposed a height restriction of twenty-eight feet. In February 2014, the OBS Club adopted "construction rules," which required approval from the OBS Club's "Building and Grounds Chairperson before any type of construction activity, including demolition begins." The rules, like the by-laws, restricted the maximum building height for dwellings on properties in the area where plaintiffs' Property is located to twenty-eight feet. The rules also state that approval was required from the "[d]eveloper and Toms River Township/Borough of Lavalette[.]"

8

In 2017, the Township amended its land use regulations to require any applications for construction or zoning permits to include "proof of notice to the Ocean Beach Surf Club."

Between October 2, 2020, and May 21, 2021, plaintiffs submitted building plans to the OBS Club, seeking approval to construct a new single-family residence. Plaintiffs represented that they were seeking to rebuild their home "in compliance with [the Federal Emergency Management Agency (FEMA)] regulations . . . and Toms River ordinances and Building Codes as well as applicable deed restrictions." The OBS Club denied plaintiffs' application citing the height restrictions in its rules and by-laws. After submitting several revised building plans, the parties were still not able to reach agreement.

In June 2022, plaintiffs sued the OBS Club in the Chancery court seeking injunctive relief. Plaintiffs also sued the Township and two individuals. Thereafter, the individuals were dismissed from the litigation. The primary relief that plaintiffs sought was an injunction declaring that the OBS Club did not have authority to impose building restrictions on plaintiffs' Property. In count one of their complaint, plaintiffs sought a declaration that the OBS Club acted without authority in promulgating and seeking to enforce the height restriction on the proposed building for plaintiffs' Property. In count two of the

A-2235-23

complaint, plaintiffs sought a declaration that the OBS Club could not enforce the height restriction on plaintiffs' Property because it had allowed numerous other homes in the community to exceed the height restriction in the by-laws.

The parties then engaged in discovery. While discovery was still ongoing, plaintiffs moved for partial summary judgment against the OBS Club on counts one and two of their complaint. The OBS Club opposed that motion and cross-moved for partial summary judgment, seeking to dismiss plaintiffs' complaint.

The Chancery court heard arguments on those cross-motions on August 3, 2023. Two weeks later, on August 17, 2023, the court granted in part and denied in part the motions. The Chancery court granted partial summary judgment in favor of plaintiffs on count one and declared that plaintiffs' Property "is not subject to the building height restrictions adopted by" the OBS Club "or its predecessor-in-interest and therefore that height restriction is unenforceable as to" plaintiffs' Property. The Chancery court also ruled that the relief that plaintiffs were seeking against the Township was effectively moot and it dismissed all those claims without prejudice. In addition, the court denied the OBS Club's cross-motion for summary judgment. Finally, the court ruled that plaintiffs' remaining claims against the OBS Club were legal claims seeking

money damages and the Chancery court transferred those claims to the Law Division "for further action on those claims."

Approximately three weeks later, on September 6, 2023, the OBS Club moved for reconsideration and sought a stay pending an anticipated interlocutory appeal. On January 22, 2024, the Chancery court denied the motion for reconsideration. Then, on February 6, 2024, the Chancery court entered an order denying the OBS Club's request for a stay of the partial summary judgment order.

The OBS Club then filed a motion with us seeking leave to appeal the interlocutory orders entered on August 17, 2023 and January 22, 2024, and for a stay pending the appeal. Thereafter, plaintiffs and the OBS Club entered into an agreement, the OBS Club withdrew its motion for a stay, and plaintiffs filed papers supporting the OBS Club's motion for leave to file the interlocutory appeal. We then granted the motion for leave to appeal the August 17, 2023 partial summary judgment order and the January 22, 2024 order denying the motion for reconsideration.

At oral argument before us, counsel for the parties informed us that in June 2024, the Township approved plaintiffs' construction plan, including allowing the new dwelling to be a total height of just over thirty-nine feet,

including a flood elevation. Plaintiffs then proceeded with and completed the construction of their new home. Under the parties' agreement withdrawing the request for a stay pending appeal, plaintiffs effectively acknowledged that if they lost this appeal, the OBS Club could seek to force them to reduce the height of their new building.[4]

## II.

On appeal, the OBS Club makes two arguments. First, it contends that the Chancery court ignored the language of the Genesis Deed and made factual findings concerning disputed issues. It also contends that the court made its ruling without joining the Ocean Beach Co., which it argues is an indispensable party. Second, the OBS Club alleges that the Chancery court used an incorrect standard in reviewing its motion for reconsideration.

We review the trial court's grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

---

[4] At our request the parties briefed the issue of whether the completion of the construction on the new home mooted the issues on this appeal. Having received and reviewed the parties' arguments concerning not seeking a stay, we are satisfied the issues are not moot.

any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014). Generally, summary judgment is not appropriate prior to the completion of discovery. Hollywood Cafe Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 219-20 (App. Div. 2022).

Our de novo review of the record establishes that the Chancery court erred in granting partial summary judgment to plaintiffs. The central issue in this case is whether the OBS Club has the authority to adopt building restrictions beyond the restrictions that are contained in the Genesis Deed. The resolution of that issue depends on: (1) whether the OBS Club is the "property owners' association" referred to in the Genesis Deed, and (2) whether the OBS Club can enact additional restrictive covenants.

"New Jersey recognizes the public policy that restraints on the alienation of property are generally disfavored." Cape May Harbor Vill. & Yacht Club Ass'n, Inc. v. Sbraga, 421 N.J. Super. 56, 71 (App. Div. 2011). Nevertheless, restrictions on property are enforceable if they are clearly set forth in restrictive

covenants, are reasonable, and are part of the chain of title. Id. at 68-74. Moreover, property owners in New Jersey can form common interest communities that have the power to enact additional restrictions and regulations on individually owned properties. Id. at 72-73. See also Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 487, 507 (2012); Twin Rivers, 192 N.J. at 368-69; Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 135 (App. Div. 2018); Mulligan v. Panther Valley Prop. Owners Ass'n, 337 N.J. Super. 293, 302 (App. Div. 2001).

The authority of a homeowners' association is derived from the original deed or declaration. Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 110 (2006); Alloco, 456 N.J. Super. at 135; Cape May Harbor, 421 N.J. Super. at 69-70. So, if a property owner joins a homeowners' association with knowledge that that association can impose restrictions on the use of the property and the type of dwellings that can be constructed on the property, the restrictions will be enforceable, if the restrictions are valid under the business judgment rule or the reasonableness standard. Cape May Harbor, 421 N.J. Super. at 69; Mulligan, 337 N.J. Super. at 302. See also Twin Rivers, 192 N.J. at 369. As we explained in Cape May Harbor:

> Homeowners associations in common interest developments (as opposed to condominiums) do not

arise out of a statute. <u>Highland Lakes Country Club & Cmty. Ass'n v. Franzino</u>, 186 N.J. 99, 110 (2006). A homeowners association is created by filing a "declaration of covenants, conditions and restrictions contained in deeds and association bylaws." <u>Ibid.</u> The covenants include restrictions and conditions that run with the land and bind all current and future property owners. <u>Ibid.</u> The bylaws set forth rules and regulations governing the association's members. <u>Id.</u> at 111.

[421 N.J. Super. at 70.]

<u>See also</u> <u>Restatement (Third) of Prop.</u>: Servitudes § 1.1(1) (Am. L. Inst. 2000). "Property owners who purchase their properties subject to such restrictions give up a certain degree of individual freedom in exchange for the protections from living in a community of reciprocal undertakings." <u>Cape May Harbor</u>, 421 N.J. Super. at 70 (quoting <u>Villas W. II of Willowridge Homeowners Ass'n, Inc. v. McGlothin</u>, 885 N.E.2d 1274, 1278-79 (Ind. 2008)).

The Chancery court concluded that the Genesis Deed failed to put plaintiffs on notice that their Property was subject to restrictions that could be modified or supplemented by the OBS Club. The court also reasoned that when the Genesis Deed was originally conveyed, the OBS Club had not yet been formed and that there was no entity acting as the homeowners' association. Those conclusions are not supported by the current record.

15

The Genesis Deed expressly states that there would be a homeowners' association, and that the association could establish "any other rules or regulations it chooses." It also included a general restriction that states: "[n]o building, alteration, or addition shall be made without the written approval of the Ocean Beach Co."

In considering plaintiffs' motion for partial summary judgment, the Chancery court was required to accept the factual contention by the OBS Club that it was the homeowners' association referenced in the Genesis Deed. That assertion by the OBS Club is supported by the documents and certifications submitted on the summary judgment motion, including the Genesis Deed and the documents supporting the OBS Club's contention that it was the recognized property owners' association for the Ocean Beach community. Moreover, plaintiffs offered no contrary evidence.

On the record before us, it is not entirely clear whether plaintiffs dispute that the OBS Club is the recognized homeowners' association. Plaintiffs are clearly disputing the OBS Club's right to adopt new building restrictions beyond those expressly set forth in the Genesis Deed. If, however, the OBS Club is found to be the property owners' association referenced in the Genesis Deed, it

16

A-2235-23

also has the right to adopt new rules governing construction of dwellings on the properties of the members of the Club.

A homeowners' association of a common interest development can impose new restrictions provided they have that right in their by-laws and provided that the restrictions are reasonable under the business judgment rule or the reasonableness standard. Cape May Harbor, 421 N.J. Super. at 72-74; Alloco, 456 N.J. Super. at 141. In this case, the Genesis Deed expressly stated that the property owners' association could adopt "any other rules or regulations it chooses." The OBS Club by-laws state that the by-laws can be amended "by a vote of two-thirds of the members present at a regular or special meeting of the club membership[.]"

In accordance with those by-laws, in 1989 the OBS Club adopted building height restrictions. Given that plaintiffs had already purchased their Property at the time the height restrictions were adopted, and the restrictions affected a fundamental property right, the new height restrictions would have to pass the reasonableness standard set forth in the Restatement of Property § 406. See Cape May Harbor, 421 N.J. Super. at 72-74.

In granting summary judgment to plaintiffs, the Chancery court relied on a decision by the Supreme Court of Arizona. See Kalway v. Calabria Ranch

17

HOA, LLC, 252 Ariz. 532 (2022). That case is distinguishable and not controlling in this matter for several reasons. First, Kalway is an out-of-state decision and, therefore, not binding. State v. Pickett, 466 N.J. Super. 270, 316 (App. Div. 2021). Second, the facts of Kalway are distinguishable. In Kalway, the language of the original deed did not give sufficient notice to homeowners that additional restrictions and covenants could be imposed. Kalway, 252 Ariz. at 539. In that regard, the Kalway court held that the notice provisions were "too broad and subjective to give notice of future amendments." Ibid. Here, by contrast, the Genesis Deed explicitly states that there would be a homeowners' association that could establish "any other rules or regulations it chooses."

The existing record, however, does not allow us to determine whether the OBS Club is the recognized homeowners' association. There are also the issues of whether the height restriction is reasonable and whether the OBS Club has allowed other homeowners to exceed the height restriction and therefore should be estopped from enforcing the restriction against plaintiffs. Those issues will need to be developed at an evidentiary hearing or trial on remand. Accordingly, we remand to the Chancery court with directions to hold a fact-finding hearing and determine whether the OBS Club is the recognized homeowners' association. If the Chancery court finds that the OBS Club is indeed the

18

homeowners' association contemplated in the Genesis Deed, it is then to decide whether the height restrictions enacted by the OBS Club are reasonable and enforceable against plaintiffs.

We reject the OBS Club's argument that the Ocean Beach Co. is an indispensable party. The current record does not establish what authority, if any, the Ocean Beach Co. has to restrict properties within the Ocean Beach community or whether that authority is independent of the authority of the OBS Club. Therefore, if the OBS Club believes that the Ocean Beach Co. should be joined as a party, it should make an appropriate application on remand.

There is an additional issue that must also be resolved on remand: whether the new home plaintiffs built is exempt from the OBS Club's restriction because it complies with the applicable FEMA flood elevation standard. See N.J.S.A. 58:16A-103; Gross v. Iannuzzi, 459 N.J. Super. 296, 308 (App. Div. 2019).

N.J.S.A. 58:16A-103(d) states, in part, that "any deed restriction or agreement, no matter when entered into or made, that prohibits or has the effect of prohibiting any otherwise lawful raising or constructing of a structure to a new and appropriate elevation is contrary to public policy and therefore shall be unenforceable. . . ." We have held that the statute "clearly expressed the intent [of the Legislature] to allow flood-safe construction, notwithstanding local

19

zoning laws" or deed restrictions. See Iannuzzi, 459 N.J. Super. at 304. In that regard, we explained:

> Under the statute, structures are to be raised in their "original dimensions" to the "appropriate" elevation and no more. N.J.S.A. 58:16A-103(a), (b)(2), (c)(2). Reading the statute as a whole, we conclude the requirement that the exemption be as limited as possible must be read in pari materia with the requirements that the original dimensions of the structure be maintained and the elevation be no more than necessary. The clear import of the language is that the owner can raise the entire structure several feet off the ground, while maintaining the original dimensions of the structure - including the original amount of living space. Nothing in the wording or history of the statute remotely suggests that the Legislature intended to require owners of two-story residences to abandon the first floors of their homes in order to obtain a flood-protected structure.
>
> [Id. at 308.]

In their briefs, the parties discussed but did not fully develop whether plaintiffs' new home would be elevated in accordance with the applicable FEMA elevation standards. Moreover, as already noted, plaintiffs' new home was built while this appeal was pending. Accordingly, we directed the parties to submit supplemental briefs addressing (1) the height of the home plaintiffs have built; (2) the applicable FEMA flood elevation standard for plaintiffs' new home; (3) whether the height of plaintiffs' as-built home is under, at, or above the "highest

20

applicable flood elevation standard;" and (4) if plaintiffs' new home is below or at the highest applicable flood standards, whether the OBS Club's height standard is not enforceable under N.J.S.A. 58:16A-103. See also Iannuzzi, 459 N.J. Super. at 307-08.

In response, the parties, through their counsel, submitted supplemental briefs and appendices. Those briefs and appendices make clear that there are disputed issues concerning (1) how to measure the applicable FEMA flood elevation standard; (2) whether the height of plaintiffs' as-built home is under, at, or above the "highest applicable flood elevation standard;" and (3) whether the OBS Club's height standards are enforceable against the home that plaintiffs have now built. In short, those additional issues will also have to be resolved on remand. We, therefore, reverse and vacate the August 17, 2023 and January 22, 2024 orders and remand this matter for further proceedings.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION