820 A.2d 690 (2003)
359 N.J. Super. 518
COOPER RIVER PLAZA EAST, LLC, Plaintiff-Appellant,
v.
The BRIAD GROUP, Defendant-Respondent, and
Township of Pennsauken, Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted March 24, 2003.
Decided April 30, 2003.
*692 Braverman Kaskey & Caprara attorneys for appellant (David L. Braverman, Philadelphia, PA, and Ryan J. Durkin, on the brief).
Wolf, Block, Schorr and Solis-Cohen attorneys for respondent (James Greenberg, York, PA, and Thomas Paolini, on the brief).
Before Judges HAVEY, A.A. RODRÍGUEZ and PAYNE.
*691 The opinion of the court was delivered by PAYNE, J.A.D.
Plaintiff Cooper River Plaza East, LLC (Cooper River) appeals from the order of the Chancery Division, General Equity Part, granting summary judgment in favor of The Briad Group (Briad) on Cooper River's complaint seeking reversion of property located in the Township of Pennsauken as the result of alleged violations of deed restrictions placed on that and adjoining property. We affirm.
The facts of the matter are as follows: In 1967, the Bleznak family sold a small piece of property in Pannsauken designated as Block 6305, Lot 5, located at the southwest corner of Route 70 and McClellan Avenue, to Marlton Realty Corporation (Marlton). At the time of the sale, Marlton was the existing owner of a much larger piece of property designated as Block 6305, Lot 4, located on Route 70, directly to the west of Lot 5. A one-story commercial block building was situated on Lot 4. Lot 5 was purchased to permit access to Lot 4 from McClellan Avenue. The Bleznaks retained Lot 3, which was located south of Lot 5 on McClellan Avenue, but on the opposite or eastern side of the street. Lot 3 has no frontage on Route 70, and indeed is situated considerably south of that highway. An apartment building known as Cooper River Plaza East was constructed on Lot 3 in 1962. It is owned by plaintiff Cooper River, the principal shareholder of which is Alan Bleznak, an original grantor of Lot 5. Cooper River has succeeded to any rights previously held by the Bleznaks, as grantors, in connection with the deed to Lot 5. Briad, as a subsequent purchaser, has succeeded to the rights and obligations of *693 Marlton, as grantee, in connection with that deed.
The deed to Lot 5 contains a number of restrictions, as follows:
(a) No structure is to be erected on the premises constituting the subject matter of this agreement [Lot 5].
(b) No structure is to be erected on the premises adjacent to the premises forming the subject matter of this deed [Lot 4] forward of the present building line of the building presently situate on said adjacent premises, and in this regard grantee certifies that it is the owner of the adjacent property situate generally northwesterly of the subject premises and that if called upon to do so by grantors herein, it will agree to the recordation of an instrument sufficient to cause this restriction to be effectual as to those premises.
(c) Grantee agrees there shall be no parking of motor vehicles upon the subject premises [Lot 5].
(d) Grantee agrees to do and perform within one year from the date of acquisition of title of the premises described herein, those things set forth in a Site Plan, Detail Plan and Planting Plan by John Rahenkamp & Associates, Inc., the landscape architects and site planners, dated October 17, 1966, and the specifications accompanying said plan dated October 25, 1966, which documents are incorporated herein by reference.[1]
(e) Grantee agrees to perpetually maintain the plantings, shrubbery and other landscaping described therein or replacements thereof [on Lot 5].
The deed provides, additionally, that in the event of breach by the grantee of any of the deed's restrictions, conditions and covenants, Lot 5 would revert to the grantors or their successor in interest, upon proper application to a court of competent jurisdiction. The deed to Lot 5 was properly recorded, and its restrictions were reviewed in connection with a subsequent sale of the property to Briad, the holder of a Wendy's restaurant franchise.
On November 28, 2000, Pennsauken's Planning Board granted final site plan approval for the construction by Briad of a Wendy's restaurant on Lots 4 and 5, which were to be consolidated by deed.[2] In accordance with that plan, the restaurant itself would replace the commercial structure then existing on Lot 4, and parking was proposed for both lots. Existing driveways accessing Route 70 and McClellan Avenue would be utilized for two-way ingress and egress.
Lots 4 and 5 were sold by the prior owner, Verga Realty Corp., to Briad in April 2001. In connection with that sale, by letter dated May 15, 2001, Verga's attorney undertook to obtain from Cooper River a quitclaim deed removing restrictions contained in the deed to Lot 5restrictions that had been discovered to exist shortly before the sale occurred. Thereafter, on May 17, 2001, following a telephone conversation between Marlene Laveman, General Counsel for Briad, and William Finlayson, Chief Operating Officer of The Bleznak Organization (another entity controlled by Allan Bleznak)[3], Laveman enclosed a copy of the landscaping and lighting plan for the restaurant and noted *694 that the Wendy's building would "be set back farther from McClellan than the current building." Soon thereafter, Cooper River referred the matter to counsel, who in a letter dated May 31 to Verga's attorney with copies to Laveman and Finlayson, stated that Cooper River had reviewed the site plan, which "shows proposed parking spaces located in the restricted area in violation of the Deed restriction." A suit to enforce the right of reversion contained in the deed was threatened unless agreement regarding the use of the area could be reached.
Communications between Laveman and Finlayson continued. By letter dated June 6, Laveman provided Finlayson with a full set of plans for the property and invited discussion, and on June 13, she sent a letter to him enclosing a picture of a completed Wendy's. A plan showing a reduction in parking within Lot 5 was provided by Laveman to Finlayson by letter dated June 20, 2001. Eventually, all parking was removed from that Lot. None of the communications between Cooper River and Briad, other than the letter of May 17, made any reference to building setbacks, and no objection to the placement of the Wendy's restaurant was voiced in exchanges between Laveman and Finlayson. The setback from Route 70 was never the subject of any communication between the parties.
Although Briad was not informed of the fact, at the time that construction of the Wendy's restaurant commenced in mid-June 2001, Cooper River determined that the restaurant on Lot 4 violated, to a minor degree, the setback requirements set forth in the deed to Lot 5, since a three-foot triangle at the entrance to the restaurant was constructed in front of the original building line facing Route 70.[4] On July 19, 2001, Cooper River filed suit against Briad[5] alleging its violation of the restrictions contained in paragraphs (b), (c) and (e) of the deed to Lot 5 and seeking reversion of that property. The complaint was served on Briad on August 2.
Construction on the restaurant, which had commenced on June 13, 2001, was substantially completed by the time of service of Cooper River's complaint, and the restaurant opened on September 11. Briad contends that the Route 70 setback could have been adjusted if Briad had been made aware of the alleged violation of the deed restriction when it was first observed by Cooper River to exist.
Briad's motion for summary judgment followed denial on August 16, 2001 of Cooper River's application for a temporary restraining order and a period of discovery in the matter. At the conclusion of the hearing on that motion, the trial judge held that the deed restriction limiting the setback of any structure built on Lot 4 was ambiguous and thus unenforceable, since the building line to which the restriction applied was unspecified. The judge also held that Cooper River's action was barred by laches. He did not discuss the issue of reversion as the result of violations of other deed restrictions relating to parking on and landscaping of Lot 5 since that issue was not raised by either party on motion for summary judgment. This latter issue was discussed only at the hearing on Cooper River's application for a temporary restraining order. At that time, Cooper *695 River conceded that parking had been resolved. Additionally, Briad represented that appropriate landscaping would be accomplished in connection with its building construction.[6]

I.
On appeal, Cooper River argues that the trial court erred in concluding as a matter of law that the following language was ambiguous and thus unenforceable: "No structure is to be erected on the premises adjacent to the premises forming the subject matter of this Deed forward of the present building line of the building presently situate on said adjacent premises." Rather, implicitly conceding ambiguity, Cooper River contends that the court should have conducted an evidentiary hearing to determine the intent of the original contracting parties in formulating the restriction and should have used the evidence gained thereby in construing and enforcing the disputed provision.[7] We disagree, holding that, in the present circumstances, only a restriction that is clear on its face can be enforced against Briad, a stranger to the initial purchase and sale transaction.
We base our determination in this regard on the long-recognized principle:
Restrictions on the use to which land may be put are not favored in law because they impair alienability. They are always to be strictly construed, and courts will not aid one person to restrict another in the use of his land unless the right to restrict is made manifest and clear in the restrictive covenant.
* * *
Of course, the rule of strict construction will not be applied to defeat the obvious purpose of a restriction.... However, the meaning of a restrictive covenant will not be extended by implication and all doubts and ambiguities must be resolved in favor of the owner's unrestricted use of the land.

[Bruno v. Hanna, 63 N.J.Super. 282, 285, 287, 164 A.2d 647 (App.Div.1960).]
See also, Berger v. State, 71 N.J. 206, 215, 364 A.2d 993 (1976); Steiger v. Lenoci, 352 N.J.Super. 90, 95, 799 A.2d 656 (App.Div.2002). This rule exists, not only because restrictions impair the public's right to alienate and fully use property, "but also because restrictions, in the framing of which a subsequent purchaser has had no voice, ought to be so clear that by the acceptance of the deed that declares them he may reasonably be deemed to have understood and acceded to them." Fortesque v. Carroll, 76 N.J.Eq. 583, 586, 75 A. 923 (E. & A.1909).
A restriction such as that found in the deed to Lot 5 is regarded in New Jersey as a contract, and its enforcement constitutes a contract right. See Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Tp., 31 F.Supp.2d 389, 397 (D.N.J.1998); Homann v. Torchinsky, 296 N.J.Super. 326, 334, 686 A.2d 1226 (App.Div.) certif. denied, 149 N.J. 141, 693 A.2d 110 (1997). The restriction thus must be analyzed in accordance with *696 the principles of contract interpretation, which include a determination of the intention of the parties as revealed by the language used by them. Ibid.; Union Co. Indus. Park v. Union Co. Park Com., 95 N.J.Super. 448, 452-53, 231 A.2d 812 (App.Div.1967). However, as the cases that we have cited make clear, in the context of a deed restriction meant to bind subsequent purchasers that are strangers to the initial transaction, the intent of the restriction must manifest itself in the language of the document itself.[8] If ambiguity remains, it cannot be resolved, as would be the case if the initial signatories disputed an ambiguous term, by resort to extrinsic evidence, as Cooper River suggests.
An intention disguised by an ambiguity cannot bind a subsequent purchaser who, as the result of an absence of clarity in the instrument of conveyance, lacks notice of restrictions that the initial parties have attempted to place on the property being conveyed. A holding otherwise would be inconsistent with principles of contract law, which require sufficient definiteness of terms so that the performance required of each party can be ascertained with reasonable certainty, as well as knowledge of and acquiescence in the stated terms. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992). It would also undermine the central public policy underlying New Jersey's Recording Act: that "a buyer ... of real property should be able to discover and evaluate all of the ... restrictions on the property" from a review of the public record. Aldrich v. Schwartz, 258 N.J.Super. 300, 307, 609 A.2d 507 (App.Div.1992). See also N.J.S.A. 46:21-1. Cf. Palamarg Realty Co. v. Rehac, 80 N.J. 446, 453, 404 A.2d 21 (1979) (expressing the purpose of the Recording Act and holding that title issues should be resolved so as to effectuate that purpose). Consequently, testimony by the parties to the initial sale of Lot 5 as to their undisclosed intent in imposing the setback restriction is irrelevant to a resolution of the issues now presented.
In finding the deed restriction at issue to be unenforceable and thus granting summary judgment, the trial court found as a matter of law that the use of the phrase "present building line" created an ambiguity that could not be resolved by reference to any other language in the deed, since buildings have four "lines," if rectangular, and since it was not possible to determine from the context of the document which "line" was meant: whether that facing Route 70, that facing McClellan Avenue, or some other. The fact of ambiguity is driven home by the deposition testimony of Alan Bleznak, an initial grantor, who variously interpreted the deed restriction at issue to apply to the entire footprint of the existing structure and to apply solely to the Route 70 facade. It is further reinforced by the conduct of Briad, which, with notice of the restriction, interpreted it as applying solely to the McClellan facade, since that facade faced Lot 5, and conformed its construction plans to that understanding. And, as previously stated, Cooper River does not contest the existence of ambiguity.
We thus find no error in the court's conclusion that an ambiguity existed.
"Whether a [contract provision or] term is clear or ambiguous is a question of law." Nester v. O'Donnell, 301 *697 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div.1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F.Supp. 275, 282 (D.N.J.1992) (additional alteration omitted)). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Id. (quoting Kaufman, 828 F.Supp. at 283).

[Assisted Living, supra, 31 F.Supp.2d at 398.]
The unspecific language of the deed restriction in this case, together with the varying interpretations placed upon that language, provide ample grounds for the court's legal conclusion.
An ambiguous restriction will not be enforced in equity so as to impair the alienability or use of property. Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J.Super. 111, 115, 170 A.2d 52 (App.Div.1961). As we stated there:
It must be remembered that a restrictive covenant is in its inception a mere contract, subject to the interpretative doctrines of contract law which focus on the parties' mutual purpose.... A purported contract so obscure that no one can be sure of its meaning is incapable of remedy at law or equity for its alleged breach ... and therefore cannot constitute a valid impediment to title.

[Id. at 115-16, 170 A.2d 52.]
See also, e.g., Fortesque, supra, 76 N.J.Eq. 583, 75 A. 923; Petersen v. Beekmere, Inc., 117 N.J.Super. 155, 171-75, 283 A.2d 911 (Ch.Div.1971); Wilson v. Ocean Terrace Garden Apartments, Inc., 139 N.J.Eq. 376, 380-81, 51 A.2d 549 (Ch.1947); Newbery v. Barkalow, 75 N.J.Eq. 128, 133, 71 A. 752 (Ch.1909); Sutcliffe v. Eisele, 62 N.J.Eq. 222, 224-25, 50 A. 69 (Ch.1901).
As a final matter, we note that the remedy of reversion, specified in lieu of damages by the deed, would result in extreme hardship to Briad, since it would eliminate one of the two routes of access to the property and, according to Briad, would foreclose use of the property as the site of a drive-in restaurant business. Additionally, we note the de minimis nature of the alleged deed restriction violation. We find appropriate the trial court's weighing of these factors in exercising its equitable power to deny relief to Cooper River in this case. See Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 188, 171 A.2d 653 (1961); Walle v. Board of Adjustment, Tp. of So. Brunswick, 124 N.J.Super. 244, 246-47, 306 A.2d 75 (App.Div.1973). Cf. Brinkley v. Western World, Inc., 275 N.J.Super. 605, 610, 646 A.2d 1136 (Ch.Div.1994).

II.
Cooper River additionally argues that the trial court erred in dismissing its entire complaint, since the court did not address alleged violations of restrictions on Lot 5 itself contained in paragraphs (c) and (e) and consisting of the use of that Lot for parking and the absence of landscaping. We regard those claims to have been mooted by Briad's removal of planned parking from the Lot and its post-construction landscaping of the site.[9] A reversion cannot be premised upon so slender a claim.
*698 Moreover, when summary judgment was sought, Cooper River never raised a dispute as to the restrictions imposed upon Lot 5. Indeed, it advised the court at the hearing on its application for a temporary injunction that the only remaining issue was that of the setback, and it failed to contest the statement that only one issue remained when that fact was asserted in Briad's statement of material facts submitted in connection with its motion for summary judgment. We decline to address issues that were not raised before the trial court; particularly here, when admissions by Cooper River that the issues had been resolved exist. Borough of Keyport v. Maropakis, 332 N.J.Super. 210, 216, 753 A.2d 154 (App.Div.2000). Cf. R. 4:46-2(b).

III.
In its final argument addressed to the deed restrictions, Cooper River claims error in the court's determination that its action was barred by the doctrine of laches. It is Cooper River's contention that as a result of factual issues raised by it, the court was compelled to hear evidence from which it could make a full finding of fact before determining whether the doctrine was applicable. In this regard, Cooper River claims on the basis of Finlayson's deposition testimony that Briad "refused to send the full site plan to him until after construction had already begun." It relies, as well, upon the letter sent by its counsel to Briad on May 31, in which counsel notes:
My client has provided a copy of a site plan which encompasses the parcel described in the aforementioned Deed and shows proposed parking spaces located in the restricted area in violation of the Deed restriction.
By copy of this letter, I am advising Marlene Laveman, Esquire, attorney for The Briad Group, of our representation in this matter and to advise that my clients intend to start an action to enforce the right of reversion contained in the Deed unless an agreement can be reached regarding the use of the restricted area.[10]
Finally, Cooper River contends that it filed its complaint immediately upon learning from engineers retained for the purpose that the Route 70 set-back of the Wendy's restaurant was nonconforming.
However, the facts recited were known to the judge at the time that summary judgment was granted. Nothing new has been introduced that would suggest the need for an evidentiary hearing. Moreover, none of the foregoing addresses the fact that, by May 31, as evidenced by the letter from Cooper River's attorney bearing that date, Cooper River had notice of the location of the Wendy's restaurant and, by June 13 or shortly thereafter, as foundations were cast, Bleznak perceived a violation of the setback restriction as applied to the Route 70 facade, but his only action was to refer the matter to counsel. The following deposition testimony of Alan Bleznak demonstrates this point:
Q ... Do you recall going by the site when construction started?
A Yes.
Q Okay. And you saw the building starting to be put in?
A Yes.
Q Okay. Did you see the concrete footings?
A Yes.
*699 Q Everything being put into place?
A Yes.
* * *
Q Okay. When the concrete footings in the beginning of construction started, did you make any observations as to whether or not it was in violation of the deed restriction?
A Yes.
Q In your opinion?
A Yes.
Q And did you believe it was?
A Yes.
Q And what did you do with regard to that?
A I spoke to [Cooper River's attorney] Mr. Resnick.
No notice of this recognized violation was provided to Briad in any of the substantial correspondence and other communications addressing and seeking to resolve other potential violations of deed restrictions until August 2 when construction of the restaurant was substantially complete. The opportunity to provide notice to Briad of the setback violation existed virtually from the commencement of construction. Yet, as the chronology set forth earlier in this opinion demonstrates, the opportunity was ignored.
The Supreme Court has held in equivalent situations that, when a party neglects to act to enforce a right for an unreasonable and unexplained period of time, under circumstances permitting diligence, and that failure to act causes prejudice to an adverse party, the doctrine of laches may be invoked to bar enforcement of that right. Lavin v. Hackensack Bd. of Ed., 90 N.J. 145, 151-52, 447 A.2d 516 (1982). "The length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs." Id. at 152, 447 A.2d 516.
In the present case, the delay, viewed objectively, was not long. However, in context, it was significant, since it resulted in the construction of a building whose nonconformance easily could have been cured if notice had been provided at the outset. Moreover, Cooper River has not provided a reason for the delay other than the fact that it sought confirmation of its belief that a violation of the deed restriction had occurred. Although such precautions cannot be dismissed as insignificant for purposes of instituting suit, the fact nonetheless remains that Cooper River believed a violation to exist, yet provided no notice of that violation while construction proceeded to substantial completion. Under these circumstances, we find an application of the doctrine of laches to be appropriate, and affirm the trial court's determination to bar suit on that alternative ground.

IV
As a final matter, Cooper River appeals from a subsequent order of the trial court dismissing its suit without prejudice under Rule 4:23-5 for failure to answer interrogatories. We decline to address arguments raised in that connection, finding them to be mooted by our resolution of the substantive elements of Cooper River's appeal.
Affirmed.
NOTES
[1] This provision is set forth only to provide context to paragraph (e). The plans and specifications referenced therein were not recorded with the deed.
[2] In is unclear whether Cooper River received notice of the hearing before the Planning Board, since its property appears to be located at a substantial distance from the site.
[3] Alan Bleznak admitted at his deposition that Finlayson possessed authority to speak for Cooper River.
[4] Wendy's was built parallel to Route 70, whereas the original building was constructed at a slight angle. A nonconforming triangle that does not extend along the full length of the facade resulted from the different orientation.
[5] In an amended complaint Cooper River also named the Township of Pennsauken as a defendant. However, the action against it was voluntarily dismissed.
[6] Driveways permitting ingress and egress to the site were pre-existing and thus did not constitute deed restriction violations. Increases in traffic onto McClelland Avenue and hours of operation of the business on Lot 4, likewise, were not subjects of any deed restriction.
[7] Cooper River has asserted, variously, that the restriction permitted an unrestricted view of its apartment complex from Route 70, it provided access to a bus stop located along the highway and facilitated shopping by the apartment's residents.
[8] The facts of this matter do not give rise to a requirement of further inquiry by Briad as to the parties' intent. Compare Assisted Living, supra, 31 F.Supp.2d at 401 (discussing inquiry notice). See also Garden of Memories, Inc. v. Forest Lawn Mem. Park Ass'n, 109 N.J.Super. 523, 533, 264 A.2d 82 (App.Div.), certif. denied, 56 N.J. 476, 267 A.2d 58 (1970).
[9] A covenant by Marlton contained in paragraph (d) of the deed, which required it do "those things set forth in a Site Plan, Detail Plan and Planting Plan by John Rahenkamp & Associates, Inc., the landscape architects and site planners, dated October 17, 1966" is inapplicable to Briad. Nothing in the deed required continued conformity to that landscape plan. Moreover, at the time that summary judgment was granted, the plan could not be located by Cooper River, and thus no issue of conformity was presented for resolution by the court. As noted previously, the plan specified in this paragraph was not recorded.
[10] Cooper River mischaracterizes this letter, stating that counsel advised Briad that, "unless the parties could come to an agreement as to the landscaping of the corner of the Property" Cooper River would seek to enforce its right to reversion.