**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3262-23

SERGEY BONDARENKO,

 Plaintiff-Appellant,

v.

TOWNSHIP OF MAHWAH,

 Defendant-Respondent.

_____

> Submitted October 16, 2025 – Decided October 30, 2025
>
> Before Judges Mayer and Paganelli.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7834-21.
>
> Sergey Bondarenko, appellant pro se.
>
> Surenian, Edwards, Buzak & Nolan LLC, attorneys for respondent (Jeffrey R. Surenian, of counsel and on the brief; Michael C. Borneo, on the brief).

PER CURIAM

 Plaintiff Sergey Bondarenko appeals from a May 6, 2024 order granting summary judgment to defendant Township of Mahwah (Township). We affirm.

For context, we briefly summarize the case law leading to the development of affordable housing in the Township.  In 1983, the New Jersey Supreme Court held every municipality has a constitutional obligation to provide a "realistic opportunity for the construction of its fair share of low and moderate income housing."  S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp. (Mount Laurel II), 92 N.J. 158, 221 (1983); see also S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp. (Mount Laurel I), 67 N.J. 151, 179 (1975).

In 1984, a trial judge handling Mount Laurel litigation in Bergen County concluded the Township failed to fulfill its affordable housing obligations.  See Urban League of Essex Ctny. v. Mahwah Twp. (Urban League), 207 N.J. Super. 169, 177 (Law Div. 1984).  The judge ordered the Township to allow for the construction of affordable housing developments.  Id. at 270.

Additionally, the Urban League judge required the Township to sell affordable units subject to:

> covenants running with the land to control the resale price of lower income for-sale units, or to employ other legal mechanisms which shall be approved by the [Township] so as to ensure such housing will remain affordable to persons of lower income.  Said covenants shall expire no sooner than twenty-five (25) years from

the issuance of the certificate of occupancy for each unit.

[Id. at 254.]

The Township appealed the Urban League decision and elected to settle the matter in 1985.  As part of the settlement, the Township agreed to be bound by the terms and provisions contained in the judge's decision except as expressly modified.  The Urban League settlement preserved the requirement that affordable units be sold with restrictive covenants.

After the Urban League settlement, the Legislature enacted the Fair Housing Act (FHA or Act), N.J.S.A. 52:27D-301 to -329.4, to establish "a statutory method designed to enable every municipality in the state to determine and to provide for its fair share of its region's need for low and moderate income housing."  Hills Dev. Co. v. Bernards Twp., 103 N.J. 1, 31 (1986).  The FHA created the Council on Affordable Housing (COAH).  Ibid.; see also N.J.S.A. 52:27D-305(a) (1985) (repealed by L. 2024, c. 2, § 37).  COAH[1] implemented the FHA.  COAH also issued certifications to municipalities that met their "present and prospective fair share of [affordable] housing."  N.J.S.A. 52:27D-

---

[1] The Legislature abolished COAH in 2024.  See L. 2024, c. 2, § 37 (repealing N.J.S.A. 52:27D-305 to -309).

A-3262-23

307(c) (repealed by L. 2024, c. 2, § 37). A certification from COAH "attache[d] a presumption of validity for a finite period to a municipality's housing element and ordinances enacted in furtherance thereof." In re N.J.A.C. 5:96 (Mount Laurel IV), 221 N.J. 1, 21-22 (2015).

In 1986, COAH adopted N.J.A.C. 5:92-12, requiring affordability controls on the sale of affordable housing units. 18 N.J.R. 1527(a) (adopted July 14, 1986). COAH directed municipalities to "consider imposing controls on rents and resales of low and moderate income units . . . that extend for a period of [twenty] years." Id. at 1540.

The next year, the Township adopted a 1987 Affordable Housing Plan (1987 Plan), implementing the terms of the Urban League settlement. The 1987 Plan stated "[i]n no case shall a sale [of a unit] . . . permit any subsequent seller to convey the unit, except in full compliance with the terms of N.J.A.C. 5:92-12." The provisions in the 1987 Plan "constitute[d] covenants running with the land with respect to each [a]ffordable [u]nit" for a period of twenty-five years.

In 1989, COAH added resale controls to N.J.A.C. 5:92-12. Municipalities were to "requir[e] all conveyances of newly constructed low and moderate income sales units . . . contain [a] restrictive covenant [lasting at least twenty

years]." N.J.A.C. 5:92-12.1(a). The restrictive covenant limited the seller of an affordable unit to either:

> 1. Sell to a qualified low and moderate income household at the controlled unit sales price . . . . ; or
>
> 2. Exercise the repayment option and sell to any purchaser at market price, providing that [ninety-five] percent of the price differential is paid to the [municipality].
>
> [N.J.A.C. 5:92-12.7(b) (1989).]

Municipalities could also "prohibit the exercise of the repayment option . . . beyond the [twenty-year] period" upon notice and adoption of a memorializing resolution. N.J.A.C. 5:92-12.8. In 1995, COAH readopted these rules but required new restrictive covenants to extend for a thirty-year period. N.J.A.C. 5:93-9.1 to -9.17.

In 1995, a developer commenced construction of the Franklin Heights Condominiums. The following year, the developer recorded the Franklin Heights Affordable Housing Plan (Franklin Heights Plan) and Master Deed governing the condominium complex. The Franklin Heights Plan incorporated the Township's 1987 Plan by creating restrictive covenants governing each unit, including that the sale of affordable units be "in full compliance with the terms of N.J.A.C. 5:92-12." The Franklin Heights Plan provided the restrictive

covenants "automatically expire[d] and terminate[d] . . . twenty-five . . . years from the . . . conveyance by the [d]eveloper of the last [a]ffordable [c]ondominium [u]nit." The Master Deed prohibited unit owners from selling their units "other than in accordance with the [Franklin Heights] Plan and [Township] regulations."

In July 1998, COAH certified the Township's plan for the construction of affordable housing and required the Township "adopt all implementing ordinances within [forty-five] days of receiving substantive certification." Per COAH's certification of its affordable housing plan, the Township adopted Ordinance 1294. Ordinance 1294 provided:

> Low and moderate income sales units approved by the Planning Board prior to January 1, 1997 . . . shall remain affordable to low and moderate income households for a period of not less than [twenty-five] years. All such conveyances shall contain deed restrictions and mortgage liens required by the Township . . . and COAH.

Ordinance 1294 mirrored the resale restrictions in N.J.A.C. 5:92-12.7. Under this ordinance, sellers of affordable units were limited to selling to low or moderate income buyers at a regulated price, or exercising the repayment option and selling at fair market value and paying the Township 95% of the difference between the actual price paid and the regulated price. Ordinance

6

1294 accorded the Township "the right to determine the most desirable means of promoting an adequate supply of low and moderate income housing" and allowed the Township to prohibit sellers of affordable units from exercising the repayment option upon the issuance of notice and a written resolution specifying the length of the prohibition consistent with N.J.A.C. 5:92-12.8.

In January 1998, the Franklin Heights developer sold an affordable unit to Arlene Roth, the original owner of plaintiff's unit. Roth's deed designated the unit as "an [a]ffordable [c]ondominium [u]nit and the owner's right, title and interest in this unit and the use, sale and resale of this property [we]re . . . subject to the terms, conditions, restrictions, limitations and provisions as set forth in the [Franklin Heights Plan]." Because the Township had yet to adopt Ordinance 1294, it was not mentioned in Roth's deed.

In 2002, Roth's estate sold the unit to Amy E. Ogden. Ogden's deed, which referenced Ordinance 1294, provided:

> The property being conveyed is an [a]ffordable [u]nit subject to the restrictions contained in . . . Ordinance No. 1294. All resales and/or rentals of said unit shall be done in accordance with the rules and regulations of Ordinance No. 1294, (as amended and/or supplemented, and/or as established by the Township of Mahwah Housing Commission).

Ogden sold her unit to plaintiff in 2004. Before purchasing the unit, the Township informed plaintiff's attorney that "the following language must be included" in any contract for the unit's future sale:

> The buyer is hereby advised and acknowledges that the property being conveyed is an [a]ffordable [u]nit subject to the restrictions contained in . . . Ordinance No. 1294. All re-sales and/or rentals of said unit shall be done in accordance with the rules and regulations of Ordinance No. 1294 and/or as established by the Township of Mahwah Housing Commission. . . . Buyer acknowledges and agrees that these restrictions cannot be altered or waived by either the buyer or the seller. Notwithstanding anything contained in this contract to the contrary, Buyer understands and agrees that the deed transferring title to the premises shall contain language that will [e]nsure the continuation of the restrictions imposed by Ordinance No. 1294 (as amended and/or supplemented, and/or as established by the Township of Mahwah Housing Commission).

Consistent with the foregoing language, plaintiff's deed contained the following restriction:

> THE PROPERTY BEING CONVEYED IS AN AFFORDABLE UNIT SUBJECT TO THE RESTRICTIONS CONTAINED IN . . . ORDINANCE NO. 1294. ALL RESALES AND/OR RENTALS OF SAID UNIT SHALL BE DONE IN ACCORDANCE WITH THE RULES AND REGULATIONS OF ORDINANCE NO. 1294 (AS AMENDED AND/OR SUPPLEMENTED, AND/OR AS ESTABLISHED BY

THE TOWNSHIP OF MAHWAH HOUSING COMMISSION).

In 2014, ten years after plaintiff purchased his unit, owners of affordable units throughout the Township sought a "declaratory judgment declaring that upon the expiration of the [twenty-five] year control period [in Ordinance 1294], plaintiffs [we]re free to sell their homes to any buyer at any price without any interference, impediment, or penalty." Errico v. Township of Mahwah, BER-L-180-14, 2014 WL 3891227, at *2 (Law Div. July 28, 2014). Eight of the plaintiffs participating in the Errico lawsuit owned units in Franklin Heights. Plaintiff did not participate in the Errico litigation.

In Errico, the parties asked the trial court to determine whether COAH regulations applied retroactively to the plaintiffs' units. The judge found the Errico plaintiffs' units were built according to the Urban League settlement, and not the FHA. Errico, 2014 WL 3891227, at *4. Because COAH "never indicated that it has retroactive control over low and moderate income cost housing that was built by agreements with municipalities prior to COAH's existence," the judge held COAH regulations were "only prospective." Ibid. Although the judge resolved the legal question in Errico, unresolved factual issues remained to be litigated.

The Township ultimately settled the Errico matter (Errico Settlement). Under the Errico Settlement, the plaintiffs participating in that case were permitted to sell their units at "any sale price . . . free of the restrictions that would be imposed by [Ordinance 1294]."

In March 2021, the Township notified plaintiff it intended to prohibit his exercise of the repayment option upon the sale of his affordable unit. The Township would only allow plaintiff to sell his unit "to another moderate income household with a deed restriction keeping the unit affordable for an additional [thirty] years."

On November 4, 2021, the Township adopted Ordinance 1952 to "eliminate any possible ambiguity" as to the meaning of the phrase "when there is a reference to 'Ordinance 1294 as may be amended.'" Ordinance 1952 expressly applied to every deed "contain[ing] a reference to 'Ordinance 1294' or 'Ordinance 1294, as may be amended.'" Ordinance 1952 allowed the seller of an affordable unit to: (a) sell at a regulated price to a low or moderate income household, or (b) exercise the repayment option and sell at fair market value but pay the Township 95% of the difference between the price paid and the regulated price. Additionally, Ordinance 1952 allowed the Township, upon notice and a memorializing resolution, to prohibit sellers of affordable housing units from

exercising the repayment option for a set period. Consistent with its authority under Ordinances 1294 and 1952, the Township adopted Resolution 063-22, prohibiting plaintiff from exercising the repayment option upon the sale of his unit until April 30, 2053.

Having recounted the history of the Township's satisfaction of its affordable housing obligation, we recite the facts leading to plaintiff's lawsuit against the Township. In November 2021, plaintiff sued the Township. In his complaint, plaintiff requested a declaratory judgment allowing him to sell his affordable unit without restriction after the restrictive covenant in his deed expired in January 2023. Additionally, plaintiff sought money damages against the Township for breach of the deed covenant, tortious interference, and property disparagement. The Township filed an answer and affirmative defenses. Among its affirmative defenses, the Township contended "[p]laintiff had an obligation to comply with the obligations clearly and unambiguously set forth in [the] deed, which required [p]laintiff to comply with Ordinance 1294 as may be amended." Additionally, the Township asserted its right under that ordinance "to extend the controls on [p]laintiff's affordable unit based upon the plain language in [the] deed." Further, the Township argued it was required to adopt Ordinance 1294 under COAH regulations.

11

After the expiration of the discovery period, the Township filed a summary judgment motion seeking a judicial determination precluding plaintiff from exercising the repayment option upon the sale of his unit until 2053. Plaintiff cross-moved for summary judgment to declare the deed restriction on his affordable unit expired on January 27, 2023.

After reviewing the written submissions and hearing the parties' arguments, Judge Gregg A. Padovano granted the Township's motion and denied plaintiff's cross-motion. In a May 6, 2024 order and attached thirty-two-page written statement of reasons, the judge found Ordinances 1294 and 1952 gave the Township the right to preclude plaintiff's exercise of the repayment option until 2053. Judge Padovano explained the deed to plaintiff's unit expressly provided that "all resales of the [u]nit must be performed according to Ordinance 1294 as amended and/or supplemented." The judge found plaintiff, "in purchasing his [u]nit on August 31, 2004, agreed to abide by all resale provisions established by the Township in Ordinance 1294 as may be amended. It is undisputed that the subject ordinance was amended under Ordinance 1952 which prevented [p]laintiff from exercising the repayment option." Judge Padovano concluded "the language contained in [p]laintiff's deed stating that the unit purchaser is bound to comply with Ordinance 1294, as amended, [wa]s binding,

and reflects the intent of the parties." Further, the judge found "[p]laintiff ha[d] not presented any valid argument that he is not now subject to the deed's restrictions, especially when the record indicates he was aware of such restrictions at the time of his purchase of the [u]nit."

Judge Padovano rejected plaintiff's arguments for invalidating the deed restriction on his unit. The judge found the doctrines of res judicata and collateral estoppel inapplicable because the Errico Settlement "explicitly stated it only applied to the [Errico] plaintiffs," the Township did not have a "full and fair opportunity to litigate the issue in Errico as it did here, and the issues argued in Errico differed from those at bar here." Additionally, Judge Padovano concluded that prohibiting plaintiff's exercise of the repayment option until 2053 would not violate the Urban League settlement because, while a municipality "could not unilaterally extend [a] restrictive covenant" predating the FHA and COAH regulations, "[p]laintiff's [u]nit was conveyed to him after the enactment of [the] FHA and the corresponding COAH recapture regulations, which provided the Township the authority to unilaterally extend the resale and rental control regulations." Moreover, as the judge explained, "[p]laintiff's deed clearly provide[d] the Township with the right to extend the restriction as it did."

Judge Padovano also rejected plaintiff's constitutional arguments. The judge found plaintiff failed to establish impairment of the contract because "[p]laintiff entered a valid contract when he purchased his [u]nit in 2004, and [he] has not established that COAH regulations create a substantial impairment under the contract clause of the Constitution." Regarding plaintiff's equal protection argument, Judge Padovano held plaintiff and the plaintiffs in the Errico litigation "were not similarly situated or alike in relevant aspects because the Errico plaintiffs negotiated with the Township," and plaintiff did not. The judge dismissed plaintiff's "taking claim" because the deed restriction applicable to his unit was "establish[ed] pursuant to COAH regulations to support and encourage the proliferation of affordable housing, [and wa]s clearly a legitimate governmental interest."

On appeal, plaintiff renews the same arguments presented to Judge Padovano. Plaintiff argues the judge erred in granting summary judgment "because permitting [the Township] to restrict the sale of plaintiff's home subsequent to the expiration of the resale control period specified by the covenants in his master deed and the initial individual deed for the sale of his home" violated the Urban League and Errico settlements. He also contends Ordinances 1294 and 1952 resulted in constitutional violations of his property

14

rights. We reject plaintiff's arguments and affirm substantially for the reasons expressed in Judge Padovano's comprehensive written statement of reasons. We add only the following comments.

We review summary judgment motions de novo, applying the same standard as the trial judge. Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024) (quoting Qian v. Toll Bros., Inc., 223 N.J. 124, 134-35 (2015)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). The court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Summary

judgment is warranted when the evidence "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson, 477 U.S. at 252).

"A grantor may, by covenant in a deed, restrict the use of land conveyed for the benefit of land retained and bind the grantee and his or her successors in title who take with notice." Perelman v. Casiello, 392 N.J. Super. 412, 418 (App. Div. 2007). A purchaser has notice "of every matter affecting the estate, which appears on the face of any deed forming an essential link in the chain of instruments through which he derived his title," and "of whatever matters he would have learned by any inquiry which the recitals in these instruments made it his duty to pursue." Garden of Memories, Inc. v. Forest Lawn Mem'l Park Assoc., 109 N.J. Super. 523, 534-35 (App. Div. 1970) (quoting Roll v. Rea, 50 N.J.L. 264, 268 (Sup. Ct. 1888)).

A deed restriction "is regarded in New Jersey as a contract, and its enforcement constitutes a contract right." Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 527 (App. Div. 2003). Deed restrictions "must be analyzed in accordance with the principles of contract interpretation." Ibid. "In construing such covenants, our primary objective 'is to determine the intent of the parties to the agreement.'" Bubis v. Kassin, 184 N.J. 612, 624 (2005) (quoting Lakes at Mercer Island Homeowners Ass'n v. Witrak, 810 P.2d 27, 28

16

(Wash. Ct. App. 1991)). "[R]estrictive covenants are not favored and are strictly construed where there is ambiguity." Perelman, 392 N.J. Super. at 419. A term is ambiguous if it is "susceptible to at least two reasonable alternative interpretations." Cooper River Plaza E., LLC, 359 N.J. Super. at 528 (quoting Assisted Living Assocs. of Moorestown, LLP v. Moorestown Twp., 31 F. Supp. 2d 389, 398 (D.N.J. 1998)). "Absent explicit indications of a special meaning, words in such covenants are given their ordinary meaning." Citizens Voices Ass'n v. Collings Lakes Civic Ass'n, 396 N.J. Super. 432, 443 (App. Div. 2007).

Courts "should not torture the language of [a contract] to create ambiguity." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (alteration in original) (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 643, 651 (App. Div. 1990)). "[I]t is well settled that a covenant should not be read in such a way that defeats the plain and obvious meaning of the restriction." Bubis, 184 N.J. at 624 (quoting Witrak, 810 P.2d at 29). "The court will not write better or more favorable contracts for parties than they have themselves seen fit to make." JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 167 (App. Div. 2022) (quoting Mancuso v. Rothenberg, 67 N.J. Super. 248, 254 (App. Div. 1961)). "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement

as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016).

Applying well-settled law governing restrictive covenants, Judge Padovano correctly concluded the restriction in the deed to plaintiff's affordable housing unit was a contract and plaintiff was bound by the terms of that contract. Under the unambiguous and plain language of that deed, plaintiff's sale of his unit had to comply with Ordinance 1294 "as amended and/or supplemented, and/or as established by the [Township]." Ordinances 1294 and 1952 permitted plaintiff to sell his unit to a low or moderate income household at a controlled price or exercise the repayment option and sell his unit at fair market value provided plaintiff pay the Township 95% of the difference between the controlled price and fair market value. These Ordinances expressly allowed the Township to prohibit plaintiff from exercising the repayment option for a set period.

Further, plaintiff's reliance on Errico is misplaced. Errico is an unpublished Law Division decision and therefore not binding on this court. See R. 1:36-3; N.J. Highlands Coal. v. N.J. Dep't of Env't Prot., 456 N.J. Super. 590, 602 n.8 (App. Div. 2017) ("[T]rial court opinions are not binding on us.").

A-3262-23

Moreover, even if we considered <u>Errico</u>, the disposition of that case did not address the issue here: "whether the Township may impose COAH restrictions prospectively on a unit holder who specifically took title with an ordinance referenced in the deed."

Additionally, the <u>Errico</u> settlement allowed the <u>Errico</u> plaintiffs to sell their units free and clear of any restrictions. Plaintiff was not one of the <u>Errico</u> plaintiffs in that litigation. Thus, plaintiff could not obtain the benefits of the settlement negotiated on behalf of the plaintiffs in <u>Errico</u>.

We also reject plaintiff's constitutional arguments for the detailed reasons expressed by Judge Padovano. On appeal, several of plaintiff's constitutional arguments were not briefed or were limited to a single conclusory sentence. "An issue not briefed on appeal is deemed waived." <u>Sklodowsky v. Lushis</u>, 417 N.J. Super. 648, 657 (App. Div. 2011). Further, "[m]ore is required than mere mention of the issue in an appeals brief." Mandel, <u>N.J. Appellate Practice</u> § 33:4-2 (2025). Parties must provide more than "a minor reference" to an argument. <u>Mackowski v. Mackowski</u>, 317 N.J. Super. 8, 10-11 (App. Div. 1998).

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude the arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division