**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1843-23

FRANK J. GALLO and
AMY M. GALLO,

     Plaintiffs-Respondents,

v.

JOHN A. HAFNER, JR.,

     Defendant-Appellant,

and

BOROUGH OF STONE HARBOR,

     Defendant-Respondent.

_____

Argued October 1, 2025 – Decided November 19, 2025

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Cape May County, Docket No. C-000006-23.

Andrew R. Sperl argued the cause for appellant (Duane Morris LLP, attorneys; Andrew R. Sperl, George J. Kroculick, and David Amerikaner, on the briefs).

Stephen Hankin argued the cause for respondents Frank J. Gallo and Amy M. Gallo (Hankin Palladino Weintrob Bell & Labov, PC, attorneys; Stephen Hankin, on the brief).

Ryan P. Duffy argued the cause for respondent Borough of Stone Harbor (Bocchi Law LLC, attorneys; Anthony S. Bocchi, on the brief).

PER CURIAM

In this matter, we consider the enforceability of a restrictive covenant affecting contiguous properties owned by plaintiffs and defendant in the Borough of Stone Harbor (Borough). Defendant owns the beachfront property, 1-107th Street, which is subject to a 1985 restrictive covenant that prohibits construction of any kind and planting above four feet in the rear fifty feet of the property to preserve an "open view to the ocean." Plaintiffs own the neighboring flag lot—7-107th Street. After defendant constructed a two-foot-high berm and planted three-to-six-foot-high trees on top of it, plaintiffs instituted suit to enforce the restrictive covenant. Defendant asserted the restriction was unenforceable due to "changed circumstances," specifically, government-built dunes that now block any ocean view from plaintiffs' property, and disputed the meaning of the restriction.

The trial court found the restriction was unambiguous and interpreted it as protecting a view toward the ocean, including dunes and beachscape, and

2

enforced the covenant. Defendant appeals from the grant of summary judgment to plaintiffs. After reviewing defendant's contentions in light of the record and applicable principles of law, we affirm.

I.

We derive the following facts from the summary judgment record. The two lots were created via a subdivision application in 1985. The owners conveyed the subject lots with a deed restriction affecting the rear (southwesterly) fifty feet of certain lots, including defendant's property.

The deed reads, in pertinent part:

> [T]here shall be no construction of any kind in the rear Southwesterly fifty (50) feet of the premises known as Lots 9.2, 10,[1] 11.2 and 12.1 of Block 107.1 as set forth on a Plan of Subdivision of Block 107.1, Lots 9.2, 10, 11.2, 12.1, 13.2, 14, 15.2, 16, 18 and 20 . . . dated September 1, 1984 and filed in the Clerk's Office of Cape May County as Map #2941. This restriction shall apply to all construction, including a swimming pool either above ground or in ground, except an open wood fence with opening of at least three (3) inches between the individual slats, that shall not exceed four (4) feet in height and shall also prohibit the planting or maintaining of any tree, shrub, bush or other living thing that exceeds four (4) feet in height and does not provide an open view to the ocean from Lots 11.3, 12.2, 13.2, 14, 15.2 and 16.1 of Block 107.1. This restriction shall run with the land and is specifically imposed for

---

[1] Defendant's property is Lot 10. Plaintiffs' property is Lot 14.

3 <span>A-1843-23</span>

the benefit of Lots 11.3, 12.2, 13.2, 14, 15.2 and 16.1 of Block 107.1, Borough of Stone Harbor Tax Map.

[(emphasis added).]

In 2002, the Army Corps of Engineers (ACOE) constructed dunes in front of 1-107th Street as part of a project between ACOE and the New Jersey Department of Environmental Protection. Those dunes remain in place at the time of these events.

Plaintiffs purchased 7-107th Street in 2015 for $5,250,000, specifically assessing the enhanced value of the property because of the deed restriction. In his deposition Frank Gallo testified that the deed restriction played a "major part of the purchase." He understood the restriction to prevent all construction and most landscaping above four feet in the rear fifty feet of the 1-107th Street property.

When the 1-107th Street property came on the market in 2018, Gallo tried to purchase it but was ultimately outbid by defendant. At the time, defendant owned a home across the street from plaintiffs. The listing agent notified defendant of the deed restriction on the property and provided him with a copy of it. The listing agent discussed the impact of the deed restriction on the market value of 1-107th Street during his deposition, acknowledging that the restriction

4

significantly reduced the potential value of the property as "[f]orty percent of the entire lot . . . contains this deed restriction."

Defendant and his wife Barbara stated during their respective depositions that defendant purchased 1-107th Street in 2018 for $5.3 million. They both confirmed they were aware of the restriction prior to purchasing the property. Barbara understood it to prohibit structures such as an in-ground pool and possibly landscaping above a certain height in the restricted area. Defendant stated he thought the restriction was "past its time" and he did not expect it to be strictly enforced, considering the dunes' presence blocked any open view.

Matthew Pappas was hired by defendant in 2019 as a general contractor to demolish the existing home and build a new one. Pappas was advised of the restrictive covenant. When he was informed of encroachments into the restricted area during the construction; he remedied them promptly.

In March 2019, defendant's attorney sent a letter to plaintiffs offering them $75,000 if he could put an in-ground pool in the restricted area and $150,000 to construct both a pool and a cabana within the restricted area. Plaintiffs did not accept the offer. In May 2019, defendant offered plaintiffs $300,000 for a pool, $400,000 for a pool and cabana, or $600,000 for the removal of the restrictive covenant. Plaintiffs rejected the offers. During the summer of 2022, defendant

A-1843-23

made inquiries, through others, exploring whether plaintiffs would sell him their home.

When completed, defendant's new home and inground pool were compliant with the restrictive covenant. The landscaping was not. The landscaper created a two-foot-high berm in the area of the restriction and planted six Japanese privet trees on top of it. As the trees grow, the foliage spreads and effectively forms a screen or fence.

Barbara Hafner explained that the landscaping, including installation of "privet" shrubs, was coordinated mainly by her and their landscaper, Nicholas Catanoso. Catanoso certified that Pappas informed him that the rear yard was subject to a restriction preventing trees and shrubbery over three to four feet in height. He stated that when he planted the privet trees, they were three to four feet tall.

Barbara recalled during her deposition that the privets were about six feet high when planted. She denied intentionally creating a berm in the restricted area and stated any elevation was due to the municipality's drainage requirements. Barbara also denied planting in the restricted area for privacy.

6

## II.

After defendant refused to prune the trees to conform with the restriction, plaintiffs filed suit against defendant seeking injunctive and declaratory relief, requesting (1) the deed restriction be enforced as written, and (2) defendant be compelled to remove, prune, or modify plantings in violation of the covenant. Plaintiffs later amended the complaint to add the Borough as a defendant, "to the extent [the Borough] ha[d] an interest in the outcome . . . ." Defendant answered and filed a counterclaim, seeking a declaratory judgment to remove the restriction from his title, contending the Army Corps-engineered dunes rendered the benefit/purpose of the restriction impossible to achieve. The trial court granted a preliminary mandatory injunction on June 7, 2023, requiring defendant to prune and then maintain shrubs at a height of no more than four feet in the rear fifty feet of his property that is subject to the restriction.

After extensive discovery, plaintiffs moved for summary judgment on defendant's counterclaim. Thereafter, defendant filed a motion to compel discovery and extend the discovery end date (DED). The Borough moved for a declaration that it had standing to enforce the deed restriction. Defendant opposed the motion.

7

On January 9, 2024, the trial court issued a well-reasoned written opinion, finding the restriction unambiguous, prohibited all construction in the restricted area, and limited all plantings above four feet. The court found the deed restriction prohibited "all construction and shrubbery over . . . four feet that impairs a view to the ocean." Finding the deed was clear on its face, the court determined it need not consider extrinsic evidence. The court stated:

> Common sense and attendant circumstances interpret the word "to" to mean in the direction towards the ocean. Nothing in the word "to" or its attendant circumstances would persuade this [c]ourt to find otherwise. The context of the restrictive deed is valuable property by the ocean in scenic Stone Harbor, New Jersey. It would cut against common sense for the original owners to preserve only a view of the ocean and not the scenic dunes and beachscape that surrounds it.

The trial court was also unpersuaded by defendant's contention that changed conditions—the construction of dunes—now frustrated the purpose of the restrictive deed because they blocked a view of the ocean from plaintiffs' property. The court found that

> based on the plain meaning of the restrictive deed, the view of the ocean is not the sole purpose of the restrictive deed, but rather, the deed was meant to include the surrounding landscape and wildlife leading to the ocean. This interpretation assumes the dunes did not exist at the time of the deed restriction and . . . [p]laintiffs' property had a full view of the ocean in

8

1985. Additionally, assuming the current landscape blocks [p]laintiffs' present view of the ocean, the analysis is unchanged. The [c]ourt holds that an open view of the landscape to the ocean is the intended purpose of the deed restriction and therefore, a remaining purpose of the restriction is still in effect. Thus, the [c]ourt finds no changed conditions under the plain meaning of the deed restriction.

In addressing the motion to extend discovery, the court found "[d]efendants have had ample time to take testimony and provide documentation. The language of the restrictive covenant is clear on its face based on common sense and attendant circumstances." The court found any further testimony or documentation would "not change the [c]ourt's analysis regarding the purpose of the restricti[on] or changed condition."

In considering the standing issue, the court noted the deed restriction was a condition of the subdivision approval creating plaintiffs' and defendant's lots. The court stated:

[B]y noting the deed restriction in the Plat that formed the basis of the Subdivision Application and then recording the Plat, a property right has been created and relied upon by surrounding property owners. Moreover, the surrounding property owners have been notified and relied on the contents of the applications. The Borough, as governing body of a municipality, is obligated under N.J.S.A. 40:55D-18 to enforce rights of the public. Accordingly, under Soussa[2], the Borough becomes a

---

[2] Soussa v. Denville Twp. Plan. Bd., 238 N.J. Super. 66 (App. Div. 1990).

A-1843-23

necessary third party in any action to lift the deed restriction. Therefore, the [c]ourt finds that the Borough of Stone Harbor has standing to enforce the deed restriction.

The court (1) granted summary judgment in favor of plaintiffs; (2) permanently restrained and enjoined defendant from "planting any shrubbery or other living thing more than [four] feet in height from natural ground elevation," in the rear fifty feet of his property that interferes with plaintiffs' "open view to, or towards, or in the direction of the ocean," further stating the restriction applies even if plaintiffs do not have an "actual view of the ocean itself from the ground level;" (3) dismissed defendant's counterclaim with prejudice; (4) permanently restrained and enjoined defendant from having any construction that impacts plaintiffs' view to or towards the direction of the ocean; (5) denied defendant's motion to extend discovery and to compel further discovery; (6) found the Borough has the requisite standing to enforce a violation of the deed restriction; and (7) denied defendant's cross-motion to dismiss the amended complaint as to the Borough.

### III.

On appeal, defendant contends the court erred in granting plaintiffs summary judgment as there were material facts in dispute regarding the meaning of the deed restriction and the effect of changed circumstances. Defendant also

asserts error in denying his motions to permit further discovery and to dismiss the Borough as lacking standing.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## A.

Defendant asserts the restriction is ambiguous as "an open view to the ocean" could mean an actual view of, not just toward, the ocean. He contends the trial court erred in interpreting the deed as unambiguous and ignoring extrinsic evidence, including historical context that supports his interpretation.

Deed restrictions "are to be construed realistically in the light of the circumstances under which they were created," but "incursions on the use of property will not be enforced unless their meaning is clear and free from doubt." Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J. Super. 111, 114-15 (App. Div. 1961). The "primary objective" in construing a restrictive covenant in a deed

"is . . . determin[ing] the intent of the parties to the agreement." Bubis v. Kassin, 184 N.J. 612, 624 (2005) (quoting Lakes at Mercer Island Homeowners Ass'n v. Witrak, 810 P.2d 27, 28-29 (Wash Ct. App. 1991)).

Our review of the interpretation and construction of a deed is de novo. Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 528 (App. Div. 2003). We analyze a deed restriction "in accordance with the principles of contract interpretation, which include a determination of the intention of the parties as revealed by the language used by them." Id. at 527; see also Homann v. Torchinsky, 296 N.J. Super. 326, 334 (App. Div. 1997) (explaining "[a] restrictive covenant [in a deed] is a contract" (first alteration in original) (quoting Weinstein v. Swartz, 3 N.J. 80, 86 (1949))).

Where there is a clear, plain meaning to a term, it is sufficient to bind subsequent purchasers because the term provides adequate notice of the restriction. Cooper River Plaza, 359 N.J. Super. at 527. However, "[a]n intention disguised by an ambiguity cannot bind a subsequent purchaser who, as the result of an absence of clarity in the instrument of conveyance, lacks notice of restrictions that the initial parties have attempted to place on the property . . . conveyed." Ibid. That principle is consistent with our contract law, "which require[s] sufficient definiteness of terms so that the performance required of

12

each party can be ascertained with reasonable certainty, as well as knowledge of and acquiescence in the stated terms." Ibid. The principle also honors "the central public policy underlying New Jersey's Recording Act: that 'a buyer . . . of real property should be able to discover and evaluate all of the . . . restrictions on the property' from a review of the public record." Id. at 527-28 (alterations in original) (quoting Aldrich v. Schwartz, 258 N.J. Super. 300, 307 (App. Div. 1992)).

Ambiguity arises "if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Id. at 528 (quoting Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Twp., 31 F. Supp. 2d 389, 398 (D.N.J. 1998)). It is for the court to decide as a matter of law whether the terms of a contract are "clear or ambiguous." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).

The trial court found the restrictive deed "was clear on its face" and it did not need to consider extrinsic evidence. Nevertheless, the court then looked to dictionary definitions, which supported its interpretation. The court stated:

> First, online dictionary definitions of the word "to," present directional language that favors [plaintiffs'] interpretation. Oxford states "in the direction of," Merriam [W]ebster states, "suggestive of movement

13

toward a place."  Similar directional definitions can be found upon a cursory view of various other dictionary websites.  The dictionary language strongly matches [plaintiffs'] interpretation of the word "to" encompassing more than just a singular object, the ocean, but rather encompasses objects in the direction of a stated object.

We agree there was no ambiguity in the deed language.  As the trial court noted, there is a clear, plain meaning dictionary definition of the word "to."  As stated, "to" is "used as a function word to indicate direction."  Merriam-Webster's Collegiate Dictionary (11th ed. 2023) (defining "to").  The word "to" in the deed restriction here is used to indicate the direction to the ocean, not solely the ocean itself.  Other extrinsic evidence is not needed because the language is clear using the dictionary definition of "to."  Therefore, the trial court did not err in determining the restrictive covenant was intended to preserve a view of the "seascape and landscape of the beach . . . ."

The restrictive covenant forbids any construction or landscaping over four feet high in the rear southwesterly fifty feet of defendant's lot to protect the "open view to the ocean."  Defendant was aware of the restriction and had read it in the deed but "thought it was past its time," and "silly."  Defendant clearly understood the restriction and its purpose but decided to purchase the property anyway.  In light of his actions and statements, defendant cannot candidly

14

contend he was unaware of the intent of the restriction. When plaintiffs refused to cede to his requests and monetary offerings to overcome the restriction's limitations, defendant then asserted a changed circumstances theory.

B.

We turn then to that argument. Defendant contends that the original purpose of the deed restriction, to preserve an open view to the ocean from plaintiffs' lot, is now impossible due to the government-built sand dunes, which completely obscure the ocean from the ground level. Therefore, he argues the restriction should no longer be enforceable.

In addressing this issue, our Supreme Court explained in American Dream at Marlboro, L.L.C. v. Planning Bd. of the Twp. of Marlboro, 209 N.J. 161, 169 (2012), that:

> The essential test that applies to such a claim of changed circumstances requires the applicant to demonstrate that it has become "impossible as a practical matter to accomplish the purpose for which" a servitude or restrictive covenant was created.
>
> The doctrine of changed circumstances is narrowly applied and "the test is stringent: relief is granted only if the purpose of the servitude can no longer be accomplished."
>
> [Ibid. (internal citations and quotations omitted) (quoting Citizen Voices Ass'n v. Collings Lakes Civic Ass'n, 396 N.J. Super. 432, 446 (App. Div. 2007)).]

"[W]hen a 'servitude[] [is] terminated under this rule, it is ordinarily clear that the continuance of the servitude would serve no useful purpose and would create unnecessary harm to the owner of the servient estate.'" Ibid. (second and third alterations in original) (quoting Restatement (Third) of Property: Servitudes, § 7.10 comment a.).

Defendant certified that when he purchased the property, the dune was already in place at a height of ten to twelve feet, "completely eliminat[ing] an open view to the ocean from [his] yard and neighboring yards." Therefore, he argued that because there was no view to protect, the purpose of the restrictive covenant could not be accomplished.

Because defendant misconstrues the purpose of the covenant, his argument fails. The deed restriction limits construction and landscaping in the rear fifty feet of defendant's lot to preserve "an open view to the ocean." As found by the trial court, the purpose of the restrictive covenant, to preserve a view to the ocean, can still be accomplished because "the deed was meant to include the surrounding landscape and wildlife leading to the ocean." Therefore, defendant has not presented evidence to satisfy the doctrine of changed circumstances.

16

C.

We briefly discuss defendant's argument that the trial court erred in denying his motion to extend the DED. He contends the court should have used the "good cause" standard as opposed to the "exceptional circumstances" standard. A trial court's decision on a discovery matter is "entitled to substantial deference and will not be overturned absent an abuse of discretion." DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (quoting State v. Stein, 225 N.J. 582, 593 (2016)).

Defendant's motion was filed on the last day of discovery and therefore, was not returnable before the DED. Rule 4:24-1(c) provides "if good cause is otherwise shown, the court shall enter an order extending discovery." "No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." Ibid.

During the course of discovery, several case management orders issued and the DED was ultimately extended to November 15, 2023, and a trial date scheduled for January 17, 2024. Defendant filed his motion to extend discovery on November 15, 2023, the date of the DED and after the date of trial had been set. Therefore, the exceptional circumstances standard applied. See R. 4:24-1(c). Defendant does not assert that he can establish exceptional circumstances.

17

Nevertheless, the trial court considered the specific discovery defendant wished to pursue and determined any further testimony or documentation would not change its analysis regarding the purpose of the restrictive covenant because the language of the restriction was clear on its face. We are satisfied the court did not abuse its discretion in denying defendant's motion to extend discovery.

In light of our decision affirming the enforceability of the restrictive covenant, and the grant of summary judgment to plaintiffs, we need not reach the arguments regarding the Borough's standing in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

18                                                                    A-1843-23